**STATE of Iowa, Appellee,**

v.

**Jon Michael AUGUST, Appellant.**

No. 98–282.

Supreme Court of Iowa.

Feb. 17, 1999.

William L. Kutmus of Kutmus & Pennington, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, and William A. Davis, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

TERNUS, Justice.

The defendant, Jon Michael August, pled guilty to three forcible felonies and was given two consecutive, indeterminate twenty-five-year sentences and one concurrent, indeterminate ten-year sentence. He claims the consecutive sentences constitute cruel and unusual punishment in violation of the Eighth Amendment. *See* U.S. Const. amend. VIII. He also asserts the trial court abused its discretion in imposing consecutive sentences. Finding no constitutional violation and no abuse of discretion, we affirm.

## I. *Background Facts and Proceedings.*

The following facts are shown in the record. Late on the evening of May 15, 1997, August, age eighteen, and three of his friends, James Schultz, also age eighteen, Laura Hochmuth, age sixteen, and Sabra Rogers, age fifteen, decided to flag down a car, spray the driver with mace, steal the car, and use it to go to Mexico. Shortly after midnight, the girls were picked up by the victim, Scott York, a pizza delivery boy on his way home from work. At the girls' request, York also picked up August and Schultz who were waiting further down the road.

Eventually, Hochmuth sprayed York with mace and thereafter Schultz began to drive York's vehicle. York was placed in the back seat between August and Hochmuth. Hochmuth took York's ATM card and, after forcing York to reveal his PIN number, used the card to obtain cash.

With York pleading to be released, the group drove from the Quad Cities to Omaha. While in Omaha, August went "car-hopping." He would enter unlocked vehicles and take whatever items of value he found. The money he obtained from these activities was used to buy gas.

Before leaving the Omaha area, the teenagers decided to kill York in a park. This plan was aborted, however, when the group was observed by a bystander. During these events, York continued to plead for his release to no avail. The group then headed towards Rogers' father's home in Oklahoma. On the way, they took turns guarding York when they stopped.

While in Kansas, Schultz, who was driving, pulled down a gravel road and stopped near a field. August, Schultz, and York left the vehicle and went into the field. While waiting in the car, Hochmuth could hear York pleading for his life, crying out, and moaning in pain. August and Schultz returned to the car without York. August had blood all over his boots, and one of the young men carried a black handkerchief covered in blood. The group left York for dead and continued on their way. York, however, miraculously survived his vicious beating and was found two days later.

The four teenagers eventually made their way to Mexico, where they contrived a story that they, along with York, whom they assumed was dead, had been victims of a kidnapping by a Mexican man named "Bob." They returned to the United States and told this story to the FBI. When confronted by the police with the actual events, Hochmuth, Schultz, and August admitted they had kidnapped York and that he had been beaten up and left for dead. There was considerable finger-pointing, however, as to who led the group in these activities; each participant claimed to have acted out of fear, simply

doing what someone else in the group told him or her to do.

August was charged with first-degree kidnapping and two counts of robbery in the first degree. *See* Iowa Code §§ 710.1, 710.2, 711.1, 711.2 (1997). As part of a plea agreement that did not include sentencing recommendations, August pled guilty to second-degree kidnapping, first-degree robbery, and second-degree robbery. *See id.* §§ 710.1, 710.3, 711.1, 711.2, 711.3. The court sentenced August to serve a term not to exceed twenty-five years on the kidnapping conviction and a consecutive term not to exceed twenty-five years on the first-degree robbery conviction. August was sentenced to prison for a term not to exceed ten years on the second-degree robbery conviction, to run concurrently with the other sentences. August will have to serve at least forty-two and one-half years before he can be released.[1]

■ On appeal, August claims the length of these sentences constitutes cruel and unusual punishment in violation of the Eighth Amendment. We review this claim de novo. *See State v. Hunter,* 550 N.W.2d 460, 462 (Iowa 1996). August also contends that the sentencing court abused its discretion in ordering consecutive sentences on the second-degree kidnapping and first-degree robbery convictions. We consider the constitutional claim first.

II. *Eighth Amendment.*

A. *Applicable law.* The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. August claims we must apply the three-factor test set out in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to determine whether his sentence violates the Eighth Amendment. Under this test,

> a [trial] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem,* 463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650. August also asks that we make an *individualized* assessment of the gravity of his offense. In other words, rather than considering the seriousness of second-degree kidnapping and first-degree robbery generically, he asks that we look at mitigating circumstances that lessen his individual culpability.

The State disagrees with August as to the appropriate analysis. The State claims that the *Solem* test is not applicable until a threshold assessment has been made that the challenged sentences are grossly disproportionate to the gravity of the crimes. The State also asserts that the crimes are viewed *objectively* in determining their seriousness. We think the State is correct on both counts.

As we recently observed in *State v. Lara,* 580 N.W.2d 783 (Iowa 1998), the *Solem* disproportionality test has been limited to " 'the rare case [in which] a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality.' " *Lara,* 580 N.W.2d at 785 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836, 871 (1991) (Kennedy, J., concurring in part and concurring in judgment)).[2] Justice

---

1. Under Iowa Code § 902.12, August is required to serve one hundred percent of his sentence and cannot be released on parole. This rule is not as absolute as it appears, however, because August will have the opportunity to reduce his sentence for good conduct time. *See* Iowa Code § 903A.2 (Supp.1997). Section 903A.2 limits any such reduction to fifteen percent of the sentence. *See State v. Ceaser,* 585 N.W.2d 192, 196 n. 1 (Iowa 1998). For purposes of calculating a reduction in sentence for good conduct time, consecutive sentences that are in the same category (as second-degree kidnapping and first-degree robbery are) are construed as one continuous sentence.

*See* Iowa Code § 903A.7 (Supp.1997). Applying these statutes, August will have to serve at least forty-two and one-half years of his fifty-year sentence.

2. The United States Supreme Court was sharply divided in *Harmelin* with respect to the proportionality requirement. Two justices joined Justice Kennedy's concurring opinion limiting the use of the *Solem* test. *See Harmelin,* 501 U.S. at 996, 111 S.Ct. at 2702, 115 L.Ed.2d at 866 (Kennedy, J., concurring in part and concurring in judgment). In addition, Justice Scalia wrote an

Kennedy's opinion in *Harmelin* sets out the principles relevant to a proportionality review:

> [First,] that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is "properly within the province of legislatures, not courts." ... [Second,] the Eighth Amendment does not mandate adoption of any one penological theory ... [and] state criminal systems have accorded different weights at different times to the penological goals of retribution, deterrence, incapacitation, and rehabilitation.... Third, marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure.... [F]ourth[,] proportionality review ... should be informed by *"objective* factors to the maximum possible extent...." The most prominent objective factor is the *type* of punishment imposed.

*Harmelin,* 501 U.S. at 998–1000, 111 S.Ct. at 2703–05, 115 L.Ed.2d at 867–68 (Kennedy, J., concurring in part and concurring in judgment) (emphasis added). Justice Kennedy concluded: "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct. at 2705, 115 L.Ed.2d at 869 (Kennedy,

J., concurring in part and concurring in judgment) (quoting *Solem,* 463 U.S. at 288, 103 S.Ct. at 3001, 77 L.Ed.2d at 648).

The Supreme Court also considered in *Harmelin* the necessity for an individualized assessment of mitigating circumstances in determining whether the Eighth Amendment has been violated. *Id.* at 994–95, 111 S.Ct. at 2701, 115 L.Ed.2d at 864–65.[3] The Court noted that although it had required such an individualized consideration in capital punishment cases, it had "drawn the line" there and saw "no basis for extending it further." *Id.* at 996, 111 S.Ct. at 2702, 115 L.Ed.2d at 865.

■ In summary, then, the test we will apply here is as follows. We will compare the sentences imposed upon August with the gravity of his crimes, viewed objectively. Only if the sentences appear grossly disproportionate will we then move to a consideration of the three-prong *Solem* test.

■ B. *Application of law.* August was sentenced to an indeterminate twenty-five-year term for the crime of second-degree kidnapping.[4] He received the same sentence for his conviction of robbery in the first degree.[5] August complains that because he is not eligible for parole, because he can only earn a fifteen percent reduction for good conduct time, and because the sentences are consecutive, the resulting forty-two and one-half years that he will have to serve in prison is cruel and unusual. Although we have held

---

3. Justice Scalia delivered the opinion of the court with respect to this issue. See *Harmelin,* 501 U.S. at 961, 111 S.Ct. at 2683, 115 L.Ed.2d at 843. Four justices joined this part of his opinion. See *id.*

4. A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to

opinion, in which Chief Justice Rehnquist joined, that rejected *any* proportionality requirement under the Eighth Amendment. *See id.* at 961, 111 S.Ct. at 2683, 115 L.Ed.2d at 843. The remaining four justices dissented, arguing that *Solem* should not be limited. See *id.* at 1021, 111 S.Ct. at 2716, 115 L.Ed.2d at 882 (White, J., dissenting); *id.* at 1027, 111 S.Ct. at 2719, 115 L.Ed.2d at 886 (Marshall, J., dissenting).

constitute kidnapping the act must be accompanied by one or more of the following: ... [t]he intent to hold such person for ransom ... [or][t]he intent to inflict serious injury upon such person ... [or][t]he intent to secretly confine such person.

Iowa Code § 710.1; *see* id. § 710.3 (specifying that second-degree kidnapping is "where the purpose is to hold the victim for ransom or where the kidnapper is armed with a dangerous weapon").

5. Robbery in the first degree is defined in the Iowa Code: "A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury...." Iowa Code § 711.2. "A person commits a robbery when, having the intent to commit a theft [here the theft of York's ATM card and automobile], the person ... [c]ommits an assault upon another ... [or] purposely puts another in fear of immediate serious injury." *Id.* § 711.1.

that consecutive sentences do not violate the Eighth Amendment and that the elimination of the possibility of parole does not transform a permissible punishment into one that is cruel and unusual, we have never considered whether the combination of two consecutive sentences, both of which must be served, constitutes cruel and unusual punishment in violation of the Eighth Amendment.

In *State v. Jones*, 298 N.W.2d 296 (Iowa 1980), we held that consecutive sentences, even if lengthy, do not constitute cruel and unusual punishment. 298 N.W.2d at 300. We concluded there was no Eighth Amendment violation where a consecutive twenty-five-year sentence was imposed on a defendant who was already serving sentences totalling fifty-one years. *Id.*

In *Lara*, we held that a sentence that is not otherwise cruel and unusual does not become so simply because the defendant must serve the entire sentence. 580 N.W.2d at 785 (citing *Harmelin*, 501 U.S. at 995, 111 S.Ct. at 2701, 115 L.Ed.2d at 865). In *Lara*, the defendant was sentenced to concurrent, indeterminate twenty-five-year terms for eleven convictions of first-degree robbery. *Id.* at 784. These sentences were subject to the statutes requiring that the defendant serve 100% of his sentence and receive a maximum reduction of fifteen percent for good conduct time. *Id.* (citing Iowa Code §§ 902.12, 903A.2). We held that the defendant's sentences did not lead to an inference of gross disproportionality given the risk of death or serious injury involved in the commission of first-degree robbery. *Id.*; see also *State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa 1998) (holding defendant's "ten-year sentence imposed upon a conviction of second-degree robbery, of which [defendant] is required to serve 100%, [does not] lead to an inference of gross disproportionality").

We think the result is the same in the present case. August committed *two* serious crimes. The fact he will have to serve his sentences consecutively does not make these otherwise permissible sentences disproportionately severe. There is nothing cruel and unusual about punishing a person committing *two* crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing. Moreover, as we held in *Lara*, the fact that August will have to serve at least eighty-five percent of his sentences does not alter our conclusion. *See Lara*, 580 N.W.2d at 785. We conclude, therefore, that the length of August's sentences does not violate his constitutional rights. *Cf. State v. Williams*, 936 S.W.2d 828, 832 (Mo.Ct.App.1996) (holding statute requiring criminal, who had three or more prior felony convictions, to serve eighty percent of two consecutive twenty-year terms for two convictions of second-degree burglary did not violate the Eighth Amendment).

### III. *Sentencing Discretion.*

■ This court reviews a district court's decision to impose consecutive sentences for abuse of discretion. See *State v. Privitt*, 571 N.W.2d 484, 486 (Iowa 1997). "An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* In applying discretion, the court

should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual.

*State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979) (quoting *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967)); *accord* Iowa Code § 901.5 (requiring that the court consider which sentence "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others").

■ August claims the trial court abused its discretion in sentencing him to consecutive sentences because the court failed to adequately consider that August (1) suffered from depression at the time of the offenses, and (2) was less culpable than the other participants because he was not as actively involved in the crimes and has expressed

remorse. At the sentencing hearing, August presented the testimony of a psychologist who had examined and tested August and reviewed his medical history. This psychologist testified to the following conclusions: (1) August had no evidence of continuing brain dysfunction; (2) August was cognitively unimpaired and quite capable of exercising rational thought and judgment; (3) August shows evidence of chronic major depression with psychotic features; (4) persons who suffer from major depression show a reduced awareness of the world around them and tend to be easily led by others; (5) August has been treated on multiple occasions with psychotropic medications, but stopped taking them shortly before these crimes; (6) August suffered from some reduced mental capacity that substantially contributed to his involvement with the other teenagers who committed this crime; (7) August would be aware of someone in pain; and (8) August's prognosis for recovery is extremely guarded. Although August minimizes his participation in the crimes, it is clear he was in on planning the robbery from the beginning. He never withdrew; he never tried to notify law enforcement; he never tried to assist York. He did, however, beat York, assisted in taking York's money and car, and stole money and items of value from other vehicles to finance the group's ill-fated trip.

The judge's statement at the sentencing colloquy shows that the court considered the factors pertinent to sentencing. He said:

I do note that you are a considerabl[y] young age, ... I note your family concerns, and I also note the lack of a serious criminal history in this case. However, those are not the only concerns or considerations I must make. I must look at the serious nature of these offenses, and they are serious. One might categorize these offenses as heinous. And I must also recognize and consider the violent manner in which these incidents took place. I also note that there's testimony today regarding impaired personality traits or characteristics, but I also note that the testimony today was that your cognitive function was unimpaired and that you are capable [of] exercis[ing] rational thought. I have also noted that you have in the past received treatment for the condition that's been described. Some might characterize that treatment as extensive. And yet, nonetheless, these incidents took place and we're here and I must determine today the length of term in which you would be required to be placed in a secure setting to protect the public. And finally, given the seriousness of the offenses, their violent nature and the consequences to the victim, I must determine what sentence remains in the best interest of society and members of this community. I am convinced that because of the serious nature of these offenses, the violent tone under which they took place, the fact that you do have the ability to exercise rational cognitive thought, and finally, I am convinced that incarceration is required in this case to protect the members of the community and society at large. I am convinced that in order to reach those goals and interests, that long-term incarceration is required, requiring consecutive sentences for the charge of kidnapping in the second degree and robbery in the first degree.

The factors upon which the court relied fully support the exercise of the court's discretion to order consecutive sentences.

We think this case is similar to *Privitt* wherein we affirmed consecutive sentences for second-degree murder and first-degree robbery imposed on a young defendant who claimed he was not as culpable as his accomplices. *See Privitt*, 571 N.W.2d at 486. We held there that the trial court did not abuse its discretion in ordering consecutive sentences even though there was evidence that the defendant had attempted to break off the crime prior to the murder. *Id.* We noted that the defendant participated fully in the whole criminal venture, that he never withdrew his participation, and that he personally sorted through the victim's purse after the murder. *Id.*

August's participation in the crimes of which he was convicted was even more extensive than the defendant's participation in *Privitt*. Additionally, despite August's depressed state and malleable personality, he

knew what he was doing. We find no abuse of discretion.

**AFFIRMED.**