# IN THE COURT OF APPEALS OF IOWA

No. 13-1771
Filed November 13, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WILLIAM R. CLAYTON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Margaret L. Lingreen and George L. Stigler, Judges.

Appeal from the statutory mandatory minimums on the sentences imposed. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

William R. Clayton, Anamosa, pro se appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, W. Wayne Saur, County Attorney, and Scott Brown and Robert Sand, Assistant Attorneys General, for appellee.

Considered by Vaitheswaran, P.J., McDonald, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MCDONALD, J.**

This case arises out of an armed bank robbery occurring in Fayette County and subsequent police pursuit from Fayette County into Bremer County. Pursuant to a plea agreement in the Fayette County case at issue here, William Clayton was convicted of one count of robbery in the first degree and two counts of attempted murder, in violation of Iowa Code sections 703.2, 707.11, 711.1, and 711.2 (2011). The district court sentenced Clayton to a term of incarceration not to exceed fifty years, with the sentences for attempted murder to run concurrent to each other but consecutive to the sentence for robbery. Pursuant to the plea agreement, the district court also imposed mandatory minimum sentences pursuant to Iowa Code section 902.12, making Clayton ineligible for release or parole until serving at least seventy percent of his sentence, or thirty-five years.

Following imposition of sentence, Clayton filed a pro se motion challenging the sentence as illegal. The district court denied the motion without hearing. On appeal, in his main brief, Clayton contends the mandatory minimum sentences for first-degree robbery and attempted murder are grossly disproportionate as applied to him, in violation of the federal and state constitutions. Clayton requests that the mandatory-minimum provisions in his sentence be vacated. In his pro se brief, Clayton argues the imposition of these sentences violates his rights to equal protection and due process. We review constitutional claims de now. *See State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).

I.

The United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. While there is authority standing for the proposition that the Eighth Amendment was only meant to limit the methods of punishment, the Supreme Court has unambiguously concluded the Eighth Amendment is available to challenge "sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 1166, 1173 (2003). The Eighth Amendment "is applicable to the States through the Fourteenth Amendment." *Rhodes v. Chapman*, 452 U.S. 337, 344 (1981). Article I, section 17 of the Iowa Constitution also prohibits the infliction of "cruel and unusual punishment."

Two types of challenges to a sentence for a term of years have been recognized. A defendant may make a categorical challenge to the sentence, contending "a particular sentencing practice violated the Eighth Amendment." *State v. Oliver*, 812 N.W.2d 636, 640 (Iowa 2012). A defendant may also make a "gross proportionality challenge to [the] particular defendant's sentence." *Id.* Clayton makes a gross proportionality challenge to his particular sentence.

The Iowa Supreme Court set forth the framework for this challenge in *State v. Oliver*:

> The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality. This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence. If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three of the analysis. These steps require the court to engage in an intrajurisdictional analysis comparing the challenged sentence to sentences for other crimes within the jurisdiction. Next, the court engages in an interjurisdictional analysis, comparing sentences in other jurisdictions for the same or similar crimes.

812 N.W.2d at 647 (citation omitted). While the framework for analyzing a gross disproportionality challenge to an individual sentence is the same under the federal and state constitutions, the Iowa Supreme Court has instructed "that review of criminal sentences for gross disproportionality under the Iowa Constitution should not be a 'toothless' review." *Id.* This means we apply "a more stringent review than would be available under the Federal Constitution." *Id.* at 650.

We first address the threshold question of whether Clayton's sentence leads to an inference of gross disproportionality. "Our principal task at this stage is to balance the gravity of the crime against the severity of the sentence." *Bruegger*, 773 N.W.2d at 873. In balancing these competing considerations, we consider several general principles. First, "we owe substantial deference to the penalties the legislature has established for various crimes." *Oliver*, 812 N.W.2d at 650. "Criminal punishment can have different goals, and choosing among them is within a legislature's discretion." *Graham v. Florida*, 560 U.S. 48, 71 (2010). Second, "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Oliver*, 812 N.W.2d at 650. Third, "a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender." *Id.* And finally, the unique circumstances of a defendant can "converge to generate a high risk of potential gross disproportionality." *Id.* at 651.

The facts and circumstances of the offenses are grave. On October 30, 2012, Clayton and his codefendant, John Mumford, donned masks and entered the Maynard Savings Bank armed with assault rifles. The defendants threatened

employees of the bank and demanded money. During the plea colloquy, Clayton admitted he pointed an assault rifle at an employee of the bank and demanded money. The bank employees complied with the robbers' demands and gave them money. The men then exited the bank and fled the scene in a getaway vehicle. During their flight from the scene, the defendants fired six shots at a civilian vehicle responding to reports of the robbery. The defendants also fired numerous shots at a fully marked patrol car, striking the patrol vehicle three times.

The bank robbery was planned and not spur-of-the-moment. Maynard Savings Bank was chosen because the sheriff's office nearest the bank was twelve miles away and Mumford believed the response time would be slow. On the day before the robbery, Clayton and Mumford were in Charles City preparing the getaway vehicle for the robbery. The two defendants planned to drive the getaway vehicle to Waterloo and scrap it to hide evidence. They planned to purchase a different car in Waterloo and flee to Minnesota. They also discussed their plan to take the stolen money to a casino and launder it.

Clayton first argues the severity of the punishment is grossly disproportionate to the offense because none of the victims sustained physical injury. We find the argument unpersuasive. The legislature limited the application of the mandatory minimum sentence to only six offenses deemed particularly heinous, including attempted murder and robbery in the first degree. *See* Iowa Code § 902.12. Physical injury is not an element of either offense. The legislature could have chosen to include a requirement that a victim sustain physical injury as a prerequisite to imposition of the mandatory minimum

sentence. It chose not to do so. We give the legislature deference because "[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual." *See Bruegger*, 773 N.W.2d at 873.

Clayton next argues the severity of the punishment is grossly disproportionate to the offense because he was nineteen years old at the time of the offense. We conclude this fact is immaterial to Clayton's gross disproportionality challenge. The legislature has not created any exemption from section 902.12 for young adults. Our supreme court has concluded "there is no constitutional or inherent right to be conditionally released from prison prior to the expiration of a valid sentence." *State v. Cronkhite*, 613 N.W.2d 664, 667 (Iowa 2000). Thus, assuming the imposition of a fifty-year sentence is constitutional under the facts and circumstances of this case, requiring Clayton to serve seventy percent of said sentence does not render the punishment cruel or unusual. *See id.* at 669 ("There can be no serious contention a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'").

Although not dispositive of this appeal, it should also be noted that the sentences at issue in this proceeding were bargained for and imposed as part of a larger plea agreement. The defendants' flight from the bank continued from Fayette County into Bremer County. Charges were filed in Bremer County for conduct occurring there. At the sentencing hearing in this case, the prosecutor stated the charges in Bremer County included eight counts of attempt to commit murder, four counts of terrorism, five counts of intimidation with a dangerous

weapon, seven counts of assault on a peace officer with intent to inflict serious injury, and seven counts of assault on a peace officer by use or display of a dangerous weapon. At the sentencing hearing in this matter, it was stated that the sentence imposed in the Bremer County case was a term of incarceration not to exceed seventy-five years, with fifty years of that sentence subject to the seventy-percent mandatory minimum. As part of the larger plea agreement, the parties agreed and jointly recommended that the sentence in the Fayette County case—at issue in this appeal—run concurrent to the sentence imposed in the Bremer County case. The district court accepted the joint recommendation.

Ultimately, we conclude Clayton's gross disproportionality challenge fails because our supreme court has foreclosed the argument in materially indistinguishable cases. In *State v. Lara*, 580 N.W.2d 783, 785 (Iowa 1998), the court affirmed the imposition of a twenty-five year sentence with a mandatory minimum following conviction for first-degree robbery:

> The risk of death or serious injury to persons present when first-degree robbery is committed is high. A twenty-five year prison sentence with a requirement that the inmate serve at least eighty-five percent of the sentence does not lead to an inference of gross disproportionality.

Similarly, the court has concluded the imposition of consecutive sentences each with a mandatory minimum sentence also does not lead to an inference of gross disproportionality:

> In *Lara*, we held that a sentence that is not otherwise cruel and unusual does not become so simply because the defendant must serve the entire sentence. 580 N.W.2d at 785 (citing *Harmelin*, 501 U.S. at 995, 111 S. Ct. at 2701, 115 L. Ed. 2d at 865). In *Lara*, the defendant was sentenced to concurrent, indeterminate twenty-five-year terms for eleven convictions of first-degree robbery. *Id.* at 784. These sentences were subject to the

statutes requiring that the defendant serve one-hundred percent of his sentence and receive a maximum reduction of fifteen percent for good conduct time. *Id.* (citing Iowa Code §§ 902.12, 903A.2). We held that the defendant's sentences did not lead to an inference of gross disproportionality given the risk of death or serious injury involved in the commission of first-degree robbery. *Id.*; *see also State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa 1998) (holding defendant's "ten-year sentence imposed upon a conviction of second-degree robbery, of which [defendant] is required to serve 100%, [does not] lead to an inference of gross disproportionality").

We think the result is the same in the present case. August committed two serious crimes. The fact he will have to serve his sentences consecutively does not make these otherwise permissible sentences disproportionately severe. There is nothing cruel and unusual about punishing a person committing two crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing. Moreover, as we held in *Lara*, the fact that August will have to serve at least eighty-five percent of his sentences does not alter our conclusion. *See Lara*, 580 N.W.2d at 785. We conclude, therefore, that the length of August's sentences does not violate his constitutional rights.

*State v. August*, 589 N.W.2d 740, 744 (Iowa 1999).

After considering the facts and circumstances of this case in light of the framework and principles set forth in *Oliver*, *August*, and *Lara*, we cannot say the sentence imposed in this case leads to an inference of gross disproportionality. Clayton planned and executed an armed bank robbery in which he personally aimed an assault rifle at a bank employee while demanding money. He led the authorities on a two-county car chase while his codefendant opened fire with an assault rifle on at least one civilian and one law enforcement officer. Clayton and his counsel then negotiated a plea agreement to resolve more than thirty counts, including ten counts of attempted murder, charged in two counties. This case is not the "rare" circumstance where the mandatory minimum sentence was so grossly disproportionate to the crime to warrant further review. *Oliver*, 812

N.W.2d at 650. Because no such inference is created, "no further analysis is necessary" with respect to Clayton's gross disproportionality challenge. *Id.*

II.

We next address the argument raised in Clayton's pro se appeal brief. Clayton argues he is entitled to the juvenile offender protections our supreme court created in *Ragland, Pearson, and Null. See State v. Null*, 836 N.W.2d 41 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88 (Iowa 2013); *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013). These protections were further extended in *State v. Lyle*, ___ N.W.2d ___, ___ 2014 WL 3537026, at *20 (Iowa 2014). In *Ragland*, *Pearson*, and *Null*, the court created a constitutional right to an individualized sentencing hearing for juveniles sentenced to a term of years without the opportunity for release young enough to lead a normal adult life. The court's rationale was based primarily on two facts: (1) "new" scientific evidence showing "the human brain continues to mature into the early twenties;" and (2) a finding that young people generally "lack the ability to properly assess risks and engage in adult-style-self-control." *Null*, 836 N.W.2d at 55. Given these "new" findings, in *Pearson*, the court concluded that a seventeen-year-old defendant tried and convicted as an adult and sentenced to fifty years' imprisonment, with a seventy-percent mandatory minimum, identical to Clayton's sentence in this case, was entitled to constitutional protection:

> Instead, we need only decide that article I, section 17 requires an individualized sentencing hearing where, as here, a juvenile offender receives a minimum of thirty-five years imprisonment without the possibility of parole for these offenses and is effectively deprived of any chance of an earlier release and the possibility of leading a more normal adult life.

*Pearson*, 836 N.W.2d at 96. In *State v. Lyle*, the court extended *Ragland*, *Pearson*, and *Null*, and held "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." *State v. Lyle*, ___ N.W.2d ___, ___ 2014 WL 3537026, at *20 (Iowa 2014). The court reasoned that "[m]andatory minimum sentences for juveniles are simply too punitive for what we know about juveniles." *Id.*

Clayton argues that he suffers from the same "immaturity, impetuosity, and poor risk assessment" our supreme court found to be constitutionally significant in *Ragland*, *Pearson*, *Null*, and *Lyle* and that he is thus entitled to the same constitutional relief. As Justice Waterman explained in *Lyle*, the relief Clayton seeks is supported in the rationale of these decisions:

> By holding Lyle's seven-year mandatory minimum sentence for his violent felony is cruel and unusual punishment and unconstitutional under article I, section 17 of the Iowa Constitution, rather than under the Eighth Amendment, the majority evades review by the United States Supreme Court. As Justice Zager observes, no other appellate court in the country has gone this far. Our court stands alone in taking away the power of our elected legislators to require even a seven-year mandatory sentence for a violent felony committed by a seventeen-year-old.
> Will the majority stop here? Under the majority's reasoning, if the teen brain is still evolving, what about nineteen-year olds? If the brain is still maturing into the mid–20s, why not prohibit mandatory minimum sentences for any offender under age 26? As judges, we do not have a monopoly on wisdom. Our legislators raise teenagers too. Courts traditionally give broad deference to legislative sentencing policy judgments. Why not defer today?

2014 WL 3537026, at *24 (Waterman, J. dissenting).

Although Clayton makes an appealing argument based on the rationale of the above-cited cases, the supreme court has nonetheless concluded that such

relief is not available to youthful but adult offenders physiologically indistinguishable—at least for legal purposes as found in *Ragland, Pearson, Null, and Lyle*—from juvenile offenders. *See id.* at \*22 ("Furthermore, our holding today has no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time. This case does not move any of the lines that currently exist in the sentencing of adult offenders."). The supreme court's distinction between juvenile offenders and young adult offenders is controlling. Accordingly, Clayton's claim fails.

III.

For the foregoing reasons, Clayton's sentences are affirmed.

**AFFIRMED.**