# IN THE COURT OF APPEALS OF IOWA

No. 24-0947
Filed April 9, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRAAVON NATHAN THOMAS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Jennifer Benson Bahr, Judge.

        A defendant challenges his sentence following his guilty plea for first-degree robbery, claiming the district court abused its discretion.  **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney General, for appellee.

        Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

Traavon Thomas appeals his sentence following his guilty plea for first-degree robbery. On appeal, Thomas claims the district court abused its discretion in imposing a seventeen-and-a-half-year mandatory minimum sentence. Thomas argues the district court imposed a harsher sentence than was necessary to ensure his rehabilitation and protection of the public. He also asserts the district court did not give proper consideration to numerous mitigating factors which weighed in favor of a lower mandatory minimum sentence.

Finding no abuse of discretion, we affirm.

## I.    Background Facts and Proceeding Facts

On the afternoon of January 8, 2023, Tucker Dobberstine drove from his home in Fremont, Nebraska to an apartment building in Council Bluffs under the belief he was meeting Dontre Hudson for a drug deal. Unbeknownst to Dobberstine, he was walking into a trap. Earlier that day, Hudson had recruited three of his friends—Trebor Carman, Keshawn Houtz-Mayfield, and Thomas—to assist him in robbing Dobberstine of a pound of marijuana. Hudson planned to lure Dobberstine into an apartment to ambush him. When Dobberstine entered the apartment, he would be met by an armed Carman and Thomas and instructed to hand over the marijuana in his possession.

At around 5 p.m., Dobberstine arrived at the apartment building and called Hudson to let him in the front door. He waited by the building's front door holding a laundry detergent box containing two pounds of marijuana. A few minutes later, Hudson walked down and let him into the building. Hudson then led Dobberstine to an upstairs apartment where Carman, Houtz-Mayfield, and Thomas were lying

in wait. Carman was hiding in the apartment's bedroom armed with a nine-millimeter handgun, while Thomas was hiding in a bathroom holding a small revolver.

When they reached the apartment, Hudson knocked on the door. Houtz-Mayfield opened the door, and Hudson led Dobberstine inside. As Dobberstine entered the apartment, Carman emerged from his hiding spot. Carman had his nine-millimeter raised and aimed directly at Dobberstine. Dobberstine panicked, dropped the detergent box he was carrying, and reached for a handgun tucked in the waistband of his pants. While Dobberstine was reaching for his gun, Carman fired several shots at him. Dobberstine fell to the ground and fired several shots back at Carman. During the shooting, Houtz-Mayfield sprinted out of the apartment in fear. When Thomas heard the shooting begin, he raced back into the bathroom and slammed the door shut. After a few minutes, the shooting stopped. Dobberstine lay dead on the floor in a pool of his own blood.

After realizing Dobberstine had been critically wounded, Carman and Hudson ran past his body and out of the apartment. One of them picked up the laundry detergent box full of marijuana that Dobberstine had brought with him. However, Thomas remained in the bathroom with the door shut. Hudson and Carman yelled for Thomas to come with them. A few moments later, Thomas came out of the bathroom and joined Hudson and Carman in the hallway of the apartment building. Thomas was still carrying the small revolver. The group sprinted out of the apartment building and toward a car parked in the parking lot.

The three jumped in the vehicle and it sped away. The vehicle was driven by Hudson's sister.

On January 10, Thomas's mother contacted the Council Bluffs Police Department to report Thomas had information concerning Dobberstine's death. That same day, Thomas met with several detectives at the police department for an interview. During the interview, Thomas gave the detectives information about Hudson, Carman, and Houtz-Mayfield. He also gave detectives information about the robbery of Dobberstine and admitted he was in the apartment during the incident. Additionally, he consented to a search of his cellphone. Thomas subsequently met with detectives for a second interview on January 26, during which he provided more expansive details about his involvement in the robbery. In the second interview, he disclosed he was fully aware of Hudson's plan to rob Dobberstine. He added that he, Hudson, Carman, and Houtz-Mayfield planned the robbery throughout the day on January 8.

For his involvement, Thomas was arrested and charged by a two-count trial information. Count I charged Thomas with murder in the first degree in violation of Iowa Code section 707.2(1)(b) (2023). Count II charged him with robbery in the first degree in violation of Iowa Code sections 711.1 and 711.2. Thomas subsequently entered into a plea agreement with the State in which he agreed to plead guilty to first-degree robbery. Pursuant to the terms of the plea agreement, Thomas agreed to testify at his co-defendants' murder trials "regarding his involvement and his co-Defendants' involvement in the January 8, 2023, Robbery and Murder of Tucker Dobberstine."

In exchange for Thomas's testimony at his co-defendants' trials, the State agreed to dismiss the first-degree murder charge. The plea agreement provided that a conviction for first-degree robbery came with a seventeen-and-a-half-year mandatory minimum sentence. However, as part of the agreement, the State agreed to "take into consideration"[1] Thomas's cooperation during the trials of his co-defendants and reserved the right "to reduce the mandatory minimum sentence of 70% to 50% of the 25-year sentence, which would be 12 ½ years in prison."[2]

The district court held a combined plea and sentencing hearing in May 2024. Prior to accepting Thomas's guilty plea for first-degree robbery, the following exchange occurred concerning the plea agreement:

> DEFENSE COUNSEL: The only thing I don't think the Court did address, though, was that under our agreement, instead of the mandatory seventy percent, we've agreed that it would be reduced to a fifty-percent sentence.
> PROSECUTOR: I don't think that's possible on a robbery one. Robbery two has a fifty percent, but robbery one is a mandatory seventy.
> DEFENSE COUNSEL: But under our agreement, though, if he agrees to testify—
> PROSECUTOR: I'm saying that would be an illegal sentence. I don't think that's an option for robbery one.

---

[1] Notably, the prosecutor did not "take into consideration" Thomas's cooperation at the time of the sentencing hearing because the prosecutor who represented the State was "filling in" for the assistant county attorney who had negotiated the plea agreement. Consequently—as detailed below, in addition to being mistaken about the discretion the court is allowed in setting the mandatory minimum for a first-degree robbery conviction—the "fill-in" prosecutor was wholly unaware of the language in the plea offer relative to consideration of a reduction of the mandatory minimum in exchange for Thomas's cooperation.

[2] Under Iowa law, "[r]obbery in the first degree is a class 'B' felony." Iowa Code § 711.2. A person convicted of a class "B" felony "shall be confined for no more than twenty-five years." Iowa Code § 902.9(1)(b). However, a person convicted of first-degree robbery "that occurs on or after July 1, 2018, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 3." *Id.* § 902.12(3).

COURT: Let's go off the record for a second.

After a brief off-the-record discussion, the district court stated, "the parties agreed that we would proceed with the sentencing today with counsel making their arguments regarding which of the mandatory sentence options were appropriate in this case." The district court subsequently accepted Thomas's guilty plea and proceeded to sentence him. When asked for a sentencing recommendation, Thomas's attorney advocated for a fifty-percent mandatory minimum. Following this recommendation, Thomas made a statement of allocution. After Thomas's statement of allocution, the district court permitted Dobberstine's mother to make a victim impact statement. The State was then asked for its sentencing recommendation. The State informed the district court it was not requesting a reduction to the fifty-percent mandatory minimum.[3] In advocating for a seventy-percent mandatory minimum sentence, the State stated:

> It's a sad case. I get it. He's a young kid. And a nineteen-year old lost his life.
> You heard him. Even now we had to sort of pull teeth to get a factual basis out of him. He continues to minimize his involvement. I'm not suggesting he was the ringleader of this. He did somewhat get roped in by other co-defendants. But there were two people of that group that were armed with weapons at the time this robbery was committed, Trebor Carman, who fired the fatal shot, and [the defendant]. [The defendant] started to come out of the bathroom with the gun and then ducked back in, you know, as it occurred.
> But based on his proffer agreement, based on his testimony at trial, and his statement that he understood he was going to get seventeen and a half years, we are requesting that you sentence him to the twenty-five years of prison with a mandatory minimum of seventeen and a half.

---

[3] Of note, earlier in the hearing, the State indicated Thomas had complied with the terms of the plea agreement. The State said, "[w]e went to trial with Dontre Hudson. [The defendant] testified fully, truthfully, and he satisfied his terms of the plea agreement as far as the State's concerned."

The district court subsequently sentenced Thomas to an indeterminate twenty-five-year prison sentence with a seventeen-and-a-half-year mandatory minimum. Thomas now appeals.[4]

## II.    Standard of Review

"We review challenges to sentences within the statutory limits for an 'abuse of discretion.'" *State v. Luke*, 4 N.W.3d 450, 455 (Iowa 2024) (citation omitted). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). A district court's ground or reason is untenable when it is not supported with substantial evidence or is based on an erroneous application of the law. *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014).

## III.    Analysis[5]

On appeal, Thomas asserts the district court abused its discretion by imposing a seventeen-and-a-half-year mandatory minimum sentence. According

---

[4] A few days after he was sentenced, Thomas filed a "motion for reconsideration of sentence." In his motion, Thomas asserted the State breached the plea agreement and that the district court improperly weighed numerous sentencing factors. Despite the label "motion for reconsideration of sentence," part of the purpose of the second hearing was to address defense counsel's concerns with sentencing error and the abnormalities that existed at sentencing. The motion was denied by the district court. Thomas does not appeal this decision.

[5] Before we address the merits of Thomas's arguments on appeal, we must first conclude he has established good cause for this appeal. *See* Iowa Code § 814.6(1)(a)(3) (stating criminal defendants have no right of appeal from a guilty plea, other than a class "A" felony, unless they establish "good cause."). Good cause is typically established "when the defendant challenges his or her sentence rather than the guilty plea." *State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020). There is no question Thomas is challenging his sentence. However, good cause is not established "when the sentence was either mandatory or agreed to in the plea bargain." *State v. Estabrook*, No. 22-1118, 2023 WL 2671954, at *1 (Iowa Ct. App. Mar. 29, 2023). Here, the parties' plea agreement permitted them to advocate different positions on the issue of the mandatory minimum sentence.

to Thomas, the district court "did not fashion a sentence that fit [him] and instead imposed a much harsher sentence than would be necessary to ensure his rehabilitation and protect the public." Thomas goes on to argue there were several mitigating factors the district court failed to take into account that "warranted a reduction of the standard mandatory minimum sentence."

In way of mitigating factors, Thomas highlights his cooperation with police officers, cooperation with the State, remorse, minor criminal history, education, family support, demonstrated ability to follow court orders, his moderate risk of future violence, and his low risk of future victimization. Thomas contends that these mitigating factors, taken together, "demonstrate that a 12 ½ year mandatory minimum sentence would be most appropriate."

We begin our analysis with some basic principles relevant to the sentencing of criminal defendants. "When a sentence imposed by a district court falls within the statutory parameters, we presume it is valid and only overturn for an abuse of discretion or reliance on inappropriate factors." *State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015). On appellate review, it is not our role to determine the sentence we would have imposed, but whether the sentence actually imposed was unreasonable. *Id.* In sentencing a defendant, the district court should "consider the societal goals of sentencing criminal offenders, which focus on the

---

The sentencing hearing was undisputably contested on the length of the mandatory minimum—the sentencing provision Thomas is challenging in this appeal. Thus, at least as to the length of the mandatory minimum, there was no agreement. Further, while Thomas was required to serve *a* mandatory minimum sentence, the district court had discretion to determine the length of the mandatory minimum. *See* Iowa Code § 902.12(3). Therefore, the length of the mandatory minimum chosen by the district court cannot be said to have been mandatory. Accordingly, we find Thomas has established good cause.

rehabilitation of the offender and the protection of the community from further offenses." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002); *see* Iowa Code § 901.5.

Additionally, the district court should consider "the nature of the offense, the attending circumstances, defendant's age, character, and propensities and chances of . . . reform." *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999) (citation omitted). The district court must also "consider all the circumstances of a particular case," which includes mitigating factors. *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). Lastly, in determining a mandatory minimum sentence for a defendant convicted of first-degree robbery, the district court should take into consideration "the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons." Iowa Code § 901.11(3).

Applying these principles, we conclude the district court did not abuse its discretion. In sentencing Thomas, the district court provided its reasonings as follows:

> Mr. Thomas, it never gives me any pleasure at all to send anyone to prison ever, but especially a very young man such as yourself, but there's no question that this is a very serious offense that you committed. As your attorney said, this was a grave crime. You along with another—with a group of people intended to rob another person. You went to the location he was at. You personally possessed a firearm. And this kind of a crime has a mandatory sentence because it is so extremely dangerous, obviously like it was in this case.
> And I understand that you did not personally fire the shot that killed Mr. Dobberstine, and I'm not considering the fact that he was killed in determining your sentence, because, of course, you're not pleading guilty to the murder charge. But, obviously, your actions have impacted the lives of everyone in this courtroom, obviously you, most importantly, but also the lives of your family members and

Mr. Dobberstine's family. And you're facing a significant prison sentence because of it, the maximum twenty-five years, which is certainly appropriate given the nature of the offense. And it is my job today to decide whether or not a fifty-percent mandatory minimum or a seventy-percent mandatory minimum is appropriate for you.

I see that—and as noted by your attorney—the presentence investigation report states that you present a moderate risk for future violence and a low risk for future victimization. I understand that you're a follower, but being a follower put you in this very bad position today and it doesn't excuse your behavior. So for that reason, I am going to impose or find that seventy percent of the maximum sentence is appropriate.

So I am ordering you to serve that mandatory minimum sentence, which will be approximately seventeen and a half years, before you are eligible for any kind of parole or work release.

And I do understand this letter, the plea offer, that states that you will plead guilty to robbery in the first degree, your sentence will be twenty-five years in prison with a mandatory minimum of seventeen and a half years. The State will take into consideration your cooperation throughout the co-defendants' trials and reserve the right to reduce that sentence to fifty percent.

The State declined to do that here today, but I considered it anyway at the request of your attorney. And given the serious nature of the offense, I do find that the seventy-percent mandatory minimum is appropriate primarily due to the nature of the offense and the fact that you personally possessed a firearm.

The district court went on to add:

As I previously indicated, this is a mandatory sentence, but I do find that it is appropriate to protect the public from future offenses, it's appropriate due to the nature and circumstances of the crime. I've considered the defendant's age and his need for and likelihood of rehabilitation.

From these statements, we are satisfied the district court considered the appropriate factors in arriving at its sentencing determination. Thomas does not argue otherwise. Instead, he suggests the district court abused its discretion by imposing a greater sentence than was necessary to ensure his rehabilitation and protection of the public. That Thomas believes a reduced mandatory minimum sentence would better aid in his rehabilitation and protection of the public is

irrelevant. As our supreme court has explained in analyzing the district court's weighing of the sentencing goals and factors:

> The application of these goals and factors to an individual case, of course, will not always lead to the same sentence. Yet, this does not mean the choice of one particular sentencing option over another constitutes error. Instead, it explains the discretionary nature of judging and the source of respect afforded by the appellate process.

*Formaro*, 638 N.W.2d at 725. The district court's sentencing determination was within the statutory limits and thus is afforded a strong presumption in its favor. *See Hopkins*, 860 N.W.2d at 554. Although Thomas may believe a different sentence was more appropriate, this does not amount to an abuse of discretion. *See State v. Laue*, No. 23-0208, 2023 WL 8448475, at *1 (Iowa Ct. App. Dec. 6, 2023) ("A different judge on a different day may have imposed a different sentence, but that does not amount to an abuse of discretion.").

And while the district court should consider mitigating factors, it is not required to address each mitigating factor urged by a defendant. *See Boltz*, 542 N.W.2d at 11 ("We do not believe however, [the district court] is required to specifically acknowledge each claim of mitigation urged by a defendant."). Additionally, "failing to acknowledge a particular factor does not mean it was not considered." *State v. Radtke*, No. 23-2103, 2024 WL 3887239, at *2 (Iowa Ct. App. Aug. 21, 2024) (citation omitted). Even though it was under no obligation to do so, the district court expressly addressed most of the mitigating factors Thomas claims it did not consider.

During the sentencing colloquy, the district court referenced that Thomas presented a moderate risk for future violence and a low risk for future victimization. In its written order of disposition, the district court stated it considered Thomas's

"remorse, lack of significant criminal history, and cooperation." And we may consult the district court's written order of disposition to analyze the reasoning provided for a particular sentence. *See State v. Cosper*, No. 21-0762, 2022 WL 610319, at *4 (Iowa Ct. App. Mar. 2, 2022) (consulting the district court's written order of disposition to analyze the reasoning provided for a defendant's sentence). We cannot discern an abuse of discretion on this ground.

As to Thomas's argument the asserted mitigating factors weigh in favor of a reduced mandatory minimum sentence, it is well-established that the weighing of sentencing factors is firmly entrusted to the discretion of the district court. *See State v. Phillips,* 996 N.W.2d 419, 422 (Iowa Ct. App. 2023) ("[T]he district court's authority to weigh the competing factors to reach a sentencing decision is the essence of the discretion given to a sentencing judge."). We find no abuse of discretion on this ground.

All of the above notwithstanding, we are troubled by what we view as the State's failure to follow the terms of the plea agreement. The letter inviting the plea agreement, stated:

> However, the State will take into consideration your client's cooperation throughout the co-Defendants' trials and reserves the right to reduce the mandatory minimum sentence of 70% to 50% of the 25-year sentence, which would be 12½ years in prison.

And at the sentencing hearing, the State had no complaints related to Thomas's cooperation, confirming that Thomas "testified fully, truthfully, and he satisfied his terms of the plea agreement as far as the State's concerned." In the end, the prosecutor was told that his pronouncement over the illegality of the sentence was

incorrect,[6] and he had to acknowledge the terms of the written plea agreement letter written by another member of the county attorney's office. And when confronted with such letter, he continued to advance a seventeen-year sentence. How can it fit within the spirit of the plea agreement to allow a prosecutor to propose a plea deal to procure cooperation by a willing defendant, get that cooperation, and then say he cannot follow his end of the bargain?

In plea agreements, the accused party is required to "waive fundamental rights," in return, we "hold prosecutors and courts to the most meticulous standards of both promise and performance." *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) (citation omitted). We have no idea how the original prosecutor who fashioned the terms of the plea agreement might have addressed this sentencing hearing because the prosecutor at the sentencing was only "filling in" for the assistant county attorney who had negotiated the plea agreement.[7]

But even with this troubling approach to a plea agreement the State concocted, there is nothing we can do because of the limited issues presented to us on appeal. *See State v. Chawech*, 15 N.W.3d 78, 84–85 (Iowa 2024) (holding that allegations of a breach of a plea deal falls into the procedural sentencing challenge category as opposed to an illegal sentence challenge, requiring them to be raised through a timely appeal).

---

[6] That prosecutor later backed off that opinion, but that stance still creates the impression that this particular prosecutor had no intention of "considering" the cooperation portion of the plea agreement as he did not know it was even a legally permissible sentence nor was he aware of the terms of the letter his assistant county attorney had provided.

[7] In the same vein, we note the written guilty plea stated it was binding on the court. *See* Iowa R. Crim. P. 2.10. That part of the plea agreement was never discussed at the plea hearing.

Accordingly, we find the district court did not abuse its discretion in imposing a seventeen-and-a-half-year mandatory minimum sentence.  We reluctantly leave for another day any possible ineffective assistance counsel claims/breach of plea agreement considerations.

Accordingly, we find the district court did not abuse its discretion in imposing a seventeen-and-a-half-year mandatory minimum sentence.

## IV.     Conclusion

Finding no abuse of discretion, we affirm Thomas's sentence.

**AFFIRMED.**