STATE of Iowa, Appellee,

v.

Robert Frank TAYLOR, Appellant.

No. 64735.

Supreme Court of Iowa.

Sept. 23, 1981.

Thomas M. McIntee, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McGIVERIN, LARSON and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Defendant was charged by trial information with first-degree murder, in violation of section 707.2, The Code 1979, following the shooting death of his wife, Lacie Mae. The jury returned a guilty verdict, defendant's motion for new trial was overruled, and he was sentenced to life imprisonment. He appeals, and we affirm.

The trial generated ample evidence from which the jury could have found the following facts. At about 11:30 p.m. on June 1, 1979, defendant returned to his Waterloo home after work to find Lacie and his three children absent. He went to a service station and bought a six-pack of beer that he drank while driving around looking for his family. About 2 a.m. he telephoned Lacie's mother, Mrs. Johnson, at Des Moines, and told her Lacie was not home. Defendant reported he and Lacie "couldn't make it," and he was going to send her home to Mrs. Johnson because "he couldn't take it no more." Defendant talked about a letter he had found, written by Lacie, in which she referred to another man. Defendant stated that "if he wasn't a kind man he could kill Lacie and the kids."

A short time later, defendant again telephoned Mrs. Johnson and reported Lacie had not yet returned home. He repeated he "could kill" his wife and children. During this conversation Lacie returned home and spoke with her mother. Defendant told Mrs. Johnson that Lacie would be on a morning bus from Waterloo to Des Moines.

During a third telephone call to Mrs. Johnson, defendant said he had pointed a gun at Lacie and scared her. However, he assured Mrs. Johnson he had put the gun away, "wouldn't hurt Lacie Mae for nothing," and would send her home.

At 5:46 a.m. defendant called an ambulance for his wife. Her body was discovered in an upstairs bedroom, on the floor partially under the bed. She had been shot at close range in the back and the left side.

After the shooting, defendant went to the mental health institute in Independence, where he telephoned his brother and told him he had shot Lacie. Defendant also told employees at the institute that he had shot his wife. He was arrested at the institute by Buchanan County authorities. When questioned by Waterloo detectives defendant denied involvement in the shooting, but at trial no claim was advanced that he did not kill Lacie. His sole defense was diminished capacity.

On appeal defendant raises issues involving admission of certain expert testimony and evidence, a jury instruction, sufficiency of the evidence, and effectiveness of counsel.

I. *Expert Testimony.*

The Black Hawk County medical examiner, Dr. Albert Dolan, investigated Lacie's death. He testified "the victim's head from approximately the top of the shoulders was completely under or almost completely under the bed, indicating to me at least that she had to crawl." Defense counsel interrupted, objecting "it is speculation." The objection was overruled. Although the objection was made after the answer, counsel did not move to strike the answer.

Dr. Dolan further testified this "crawling theory" was one of the bases he used in determining which of the two shotgun wounds was inflicted first and which wound caused the victim's death. The doctor and prosecutor made six references to "crawl" or "crawling" without objection, until this exchange:

Q. Now Doctor, based again on your medical knowledge and your experience and training, particularly involving the medical examiner's office, would your opinion that she had crawled under the bed, would that be a natural reaction for somebody who had been—

MR. DAVIDSON: Object again, it calls for speculation.

THE COURT: I don't believe the question was completed, Mr. Davidson.

Q. Somebody who had been shot or seriously injured?

THE COURT: Just a minute, what was the objection?

MR. DAVIDSON: Calls for speculation.

MR. COIL: Well, Your Honor, it is an opinion.

MR. DAVIDSON: Certainly not a medical opinion, Your Honor.

THE COURT: The objection is sustained.

On appeal defendant alleges the trial court erred in admitting the medical examiner's opinion the victim crawled under the bed prior to the second shotgun wound as it was "not the proper subject for opinion testimony."

■ Although there was objective evidence to support the doctor's opinion, we do not reach the merits of this allegation because we find defendant did not preserve error on this point. Counsel's failure to object each time crawling was mentioned in Dr. Dolan's examination and testimony was not fatal. Repeated objections need not be made to the same class of evidence once proper objection has been made and overruled. *State v. Padgett*, 300 N.W.2d 145, 146 (Iowa 1981); *State v. Kidd*, 239 N.W.2d 860, 863 (Iowa 1976). However, the objection "it is speculation" preserves nothing for review. *State v. Hubbs*, 268 N.W.2d 188, 189 (Iowa 1978).

■ It is incumbent upon the objecting party to lodge specific objections, *State v. Welsh*, 245 N.W.2d 290, 295–96 (Iowa 1976), so the trial court is not left to speculate whether the evidence is in fact subject to some infirmity that the objection does not identify. *State v. Droste*, 232 N.W.2d 483, 487 (Iowa 1975). Every ground of exception that is not particularly specified is considered abandoned. *Id.* A party cannot announce one reason for an objection at trial and on appeal rely on a different one to challenge an adverse ruling. *State v. Hicks*, 277 N.W.2d 889, 894 (Iowa 1979). Further, if an objection is made after the answer to a question is in the record, it is inadequate unless a motion to strike is made, an application to place the objection before the answer is made, or an excuse is offered for the delay in objecting to the evidence. *State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977); *State v. Hinkle*, 229 N.W.2d 744, 748 (Iowa 1975).

■ We hold defendant did not preserve the alleged error concerning Dr. Dolan's testimony.

## II. *Evidence of Victim's Extramarital Relationship.*

The State moved in limine to prohibit defendant from interrogating Lacie's friend, Kathleen Burford, about an extramarital sexual relationship with another man. Trial court sustained this motion on the ground this evidence was irrelevant because defense counsel conceded defendant was unaware of this relationship. Defendant claims this evidence was improperly excluded. He would have used this evidence to attempt to show that the shooting was provoked, or occurred in the heat of passion.

■ It is doubtful whether discovery after the fact or knowledge of a spouse's extramarital sexual relationship could constitute provocation in a murder case. *See State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976); *State v. Rutledge*, 243 Iowa 179, 190–93, 47 N.W.2d 251, 259–60 (1951); *State v. Thomas*, 172 Iowa 485, 490–92, 154 N.W. 768, 769–70 (1915). However, we are not required to reach that issue here because defendant's proof was inadequate to establish a threshold element of provocation. Defendant's offer of proof failed to demonstrate his knowledge of any extra-

marital sexual activity by his wife. Defendant could not be provoked by incidents unknown to him. Trial court, therefore, properly excluded Mrs. Burford's testimony.

█ Defendant also challenges trial court's ruling on the ground that its exclusion violated his "constitutional rights of due process under the fifth and fourteenth amendments to the United States Constitution." There is no indication in the record that defendant raised these constitutional issues at trial. Constitutional issues not presented to trial court cannot be presented for the first time upon appeal. *State v. Holmes*, 276 N.W.2d 823, 828 (Iowa 1979); *State v. Fish*, 265 N.W.2d 737, 739 (Iowa 1978).

### III. *Premeditation Instruction.*

Defendant requested that the jury instruction defining "premeditate" be modified "to include the concept of planning so as not to be inconsistent with the evidence of this case." Trial court denied the request and instructed the jury that premeditate "is to think or ponder upon a matter before acting."

The State argues that error was not preserved, because defendant did not suggest how the "concept of planning" should be incorporated and failed to present an alternative instruction for the court's consideration. The record reveals neither party submitted requested instructions, and defense counsel stated he "had no proposed instructions to submit to the court."

Assuming error was preserved, we hold trial court did not err in overruling defendant's request. The instruction given was a verbatim recital of Iowa State Bar Association Uniform Jury Instruction No. 702 (Criminal), which incorporates language we used in *State v. Williams*, 285 N.W.2d 248, 267–68 (Iowa 1979), and *State v. Fryer*, 226 N.W.2d 36, 41 (Iowa 1975).

█ We have said premeditation may be shown circumstantially by *one or more* of three categories of evidence:

(1) evidence of *planning* activity of the defendant which was directed toward the

killing; (2) evidence of *motive* which might be inferred from prior relationships between defendant and the victim; and (3) evidence regarding the *nature* of the killing.

*Williams*, 285 N.W.2d at 268 (emphasis added) (quoting *State v. Harrington*, 284 N.W.2d 244, 247–48 (Iowa 1979)). Because premeditation may be established by evidence of planning or motive or the nature of the killing, inclusion of the planning concept in the premeditation instruction might have led the jury to erroneously believe planning was a *sine qua non* of the element of premeditation. Trial court correctly defined premeditation. It did not err in denying defendant's request.

### IV. *Sufficiency of Evidence.*

Defendant contends the evidence was insufficient to support the first-degree murder verdict because there was no evidence of premeditation or deliberation. His argument is based primarily on the alleged absence of evidence of planning. We have disposed of this contention in division III.

█ We consider the evidence in the light most favorable to the State. *State v. Gibb*, 303 N.W.2d 673, 685 (Iowa 1981). Applying the *Williams* criteria to support a finding of premeditation (planning, motive, or the nature of the killing) a rational fact finder could have concluded the element of premeditation was established. The State produced witnesses who testified that defendant (1) was pointing a gun at his wife prior to the shooting, (2) had found a letter written by his wife that mentioned another man, (3) intended to end the marriage, (4) stated he could kill his wife and children, and (5) had purchased a gun and loaded it just prior to the shooting. This evidence is sufficient to show planning or motive, either of which constitutes evidence sufficient to establish premeditation.

Defendant called a psychiatrist who testified defendant lacked the capacity to plan and intentionally kill his wife. The State's expert concluded defendant could form the requisite specific intent. A diminished responsibility instruction, following the lan-

guage of Uniform Jury Instruction No. 208 (Criminal), was submitted to the jury without defense objection. The instruction made it clear the diminished responsibility defense is aimed at negating premeditation, deliberation, and specific intent to kill.

Defendant now asks us to "lay down explicit criteria for the interpretation, application, and effective use of the defense of diminished responsibility." This case does not require us to expand our case law. The jury was adequately instructed and exercised its duty to evaluate the credibility of, and the conflicting testimony of, the two psychiatrists. We find no merit in defendant's contention.

### V. *Motion for Individual Voir Dire.*

 Defendant requested individual voir dire of prospective jurors, to "eliminate and control any possible prejudice to the Defendant." He asserts trial court denied the request, but the record reflects that after a pretrial conference the parties agreed to a different procedure.

Regardless, defendant does not allege or show how trial court's refusal to allow individual voir dire prejudiced him, a prerequisite to establishing reversible error. *State v. Webb,* 309 N.W.2d 404, 414 (Iowa 1981).

### VI. *Ineffective Assistance of Counsel.*

Finally, defendant asserts his trial counsel "failed in several respects to prove effective assistance to the defense of his case." He enumerates counsel's failure to depose four State witnesses, locate several witnesses, make a motion to suppress, put defendant on the witness stand, interpose certain objections, and provide a substitute instruction on premeditation.

Although defendant claims to have requested that trial counsel locate certain witnesses and allow defendant to testify, no record supports these assertions. We have no way to evaluate the merits of defendant's claim, which is more properly considered in an application for postconviction relief. *State v. Steltzer,* 288 N.W.2d 557, 560 (Iowa 1980); *see* § 663A.2, The Code.

Judgment of the district court is affirmed.

AFFIRMED.