IN THE SUPREME COURT OF IOWA

 No. 139 / 04-1690

 Filed February 24, 2006

STATE OF IOWA,

 Appellee,

vs.

RANDOLPH LOUIS TATE,

 Appellant.

________________________________________________________________________
 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Story County, Thomas R.
Hronek, District Associate Judge.

 Defendant appeals from his conviction and sentence upon his plea of
guilty to voluntary absence. AFFIRMED.

 Linda Del Gallo, State Appellate Defender, and Theresa R. Wilson,
Assistant State Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant
Attorney General, Stephen Holmes, County Attorney, and Timothy J. Meals and
Shawn Smith, Assistant County Attorneys, for appellee.
STREIT, Justice.
 The defendant, Randolph Tate, appeals from his conviction and
sentence upon his guilty plea to voluntary absence. He contends his
counsel was ineffective in permitting him to enter a guilty plea and
failing to file a motion in arrest of judgment because the district court
misinformed him of the maximum penalty for his crime. Because we conclude
Tate has not established his ineffective-assistance-of-counsel claim, we
affirm the decision of the court of appeals and preserve the issue for
postconviction relief proceedings.
 I.  Facts and Prior Proceedings
 Randolph Tate walked out of the Curt Forbes Residential Facility in
Ames and did not return. Tate was serving a sentence at the facility as
part of a work release program.[1] Tate was authorized to leave the
facility on a food furlough, but instead of returning at the specified
time, he went to Fort Dodge to visit his terminally-ill girlfriend. He was
arrested later that week in Fort Dodge and charged with voluntary absence
in violation of Iowa Code section 719.4(3) (2003).
 Tate entered into a plea agreement with the State whereby the State
and the defendant recommended the court impose a sentence of credit for
time served and a minimum fine. The plea agreement was not conditioned on
the district court’s willingness to be bound by it. Through a discussion
with Tate, the court established there was a factual basis for the plea and
the plea was both informed and voluntary. When describing the penal
consequences to Tate’s guilty plea, the court did not inform Tate that Iowa
Code section 901.8 mandated the sentence for voluntary absence “begin at
the expiration of any existing sentence.” However, the court described the
penalty to Tate in the following manner:

 THE COURT: You are charged on the trial information with
 voluntary absence. This is, as I noted, a serious misdemeanor. It,
 therefore, carries with it a maximum penalty upon conviction of one
 year imprisonment in the county jail and a fine of up to $1500.00. Do
 you understand the maximum penalty? A. Yes, sir.

 THE COURT: There is a minimum penalty associated with this
 charge, if the Court does not suspend or defer judgment, and that
 minimum penalty is a fine of $250.00. Do you understand that? A.
 Yes, sir.

The court went on to inform Tate the sentencing judge would not be bound by
the plea agreement and the sentencing judge could “conceivably” impose any
penalty up to the maximum period provided by law.
 On September 9, 2004, Tate was sentenced to six months imprisonment
consecutive to his underlying sentence for operating a motor vehicle
without the owner’s consent. The sentencing judge stated the “defendant
shall be given credit for time previously served as shown by the records of
this county to the extent that credit was not being received in [the
underlying operating a motor vehicle without the owner’s consent
conviction].” Tate immediately told the sentencing judge “I would like to
appeal it. Yes. I would like to retract [my guilty plea]. This is not
what I was told was going to happen. I’m sorry.” The court responded
“[y]ou can discuss this with your attorney. Any notice of appeal, Mr.
Tate, must be filed in writing with the Clerk.” To which Tate responded “I
just wanted it to be part of the record. I’ll file it then.”
 Tate did in fact appeal his conviction, contending his counsel was
ineffective for failing to file a motion in arrest of judgment prior to
sentencing. Specifically, Tate contends his trial counsel erred by not
filing a motion in arrest of judgment when the district court did not
inform him that the sentence for voluntary absence must be consecutive to
the sentence for the underlying crime. See Iowa Code § 901.8 (“If a person
is sentenced for escape under section 719.4 . . . the sentencing judge
shall order the sentence to begin at the expiration of any existing
sentence.”). Therefore, he claims, when his trial counsel did not file a
motion in arrest of judgment to correct this alleged error, his trial
counsel was ineffective.
 II.  Scope of Review
 Generally our review of a challenge to the entry of a guilty plea is
for correction of errors at law. State v. Keene, 630 N.W.2d 579, 581 (Iowa
2001). However, when the challenge arises in the context of an ineffective-
assistance claim, our standard of review is de novo. State v. Tejeda, 677
N.W.2d 744, 754 (Iowa 2004).
 An ineffective-assistance-of-counsel claim in a criminal case “need
not be raised on direct appeal from the criminal proceedings in order to
preserve the claim for postconviction relief purposes.” Iowa Code
§ 814.7(1) (2005). The defendant may raise the ineffective assistance
claim on direct appeal if he or she “has reasonable grounds to believe that
the record is adequate to address the claim on direct appeal.” Id.
§ 814.7(2). Ordinarily, we do not decide ineffective-assistance-of-counsel
claims on direct appeal. See State v. Taylor, 310 N.W.2d 174, 179 (Iowa
1981). We prefer to reserve such questions for postconviction proceedings
so the defendant’s trial counsel can defend against the charge. Id.
However, we depart from this preference in cases where the record is
adequate to evaluate the appellant’s claim. State v. Schoelerman, 315
N.W.2d 67, 71 (Iowa 1982); State v. Ogilvie, 310 N.W.2d 192, 197 (Iowa
1981); Iowa Code § 814.7(3) (“If an ineffective assistance of counsel claim
is raised on direct appeal from the criminal proceedings, the court may
decide the record is adequate to decide the claim or may choose to preserve
the claim under chapter 822 [postconviction proceedings].”). Only in rare
cases will the trial record alone be sufficient to resolve the claim on
direct appeal. State v. Straw, 709 N.W.2d 128, 133 (Iowa 2006) (stating
claims of ineffective assistance of counsel raised on direct appeal are
ordinarily reserved for postconviction proceedings to allow full
development of the facts surrounding counsel’s conduct); State v. Coil, 264
N.W.2d 293, 296 (Iowa 1978). For the reasons that follow, we deem the
record insufficient.
 III.  Merits
 For his ineffective-assistance-of-counsel claim to succeed, Tate “must
prove by a preponderance of the evidence that (1) his counsel failed to
perform an essential duty, and (2) prejudice resulted.” Tejeda, 677 N.W.2d
at 754.
 In analyzing this claim, we need not determine whether his trial
counsel’s performance was deficient before examining the prejudice
component of his ineffective-assistance claim. Taylor v. State, 352 N.W.2d
683, 685 (Iowa 1984). As stated by the United States Supreme Court,

 The object of an ineffectiveness claim is not to grade counsel’s
 performance. If it is easier to dispose of an ineffectiveness claim
 on the ground of lack of sufficient prejudice, which we expect will
 often be so, that course should be followed. Courts should strive to
 ensure that ineffectiveness claims not become so burdensome to defense
 counsel that the entire criminal justice system suffers as a result.

Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 2070, 80 L.
Ed. 2d 674, 699 (1984). We therefore focus our analysis solely on the
prong which is not sufficiently supported by the record—resulting
prejudice.
 A.  Resulting Prejudice
 Because “ ‘[a]ttorney errors come in an infinite variety and are as
likely to be utterly harmless in a particular case as they are to be
prejudicial,’ ” Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 370,
88 L. Ed. 2d 203, 209 (1985) (quoting Strickland, 466 U.S at 693, 104
S. Ct. at 2067, 80 L. Ed. 2d at 697), the defendant claiming ineffective
assistance of counsel with respect to a guilty plea must prove that, but
for counsel’s breach, there is a reasonable probability he or she would
have insisted on going to trial. Straw, 709 N.W.2d at 133. Therefore,
“ ‘[e]ven if a defendant shows that particular errors of counsel were
unreasonable . . . the defendant must show that they actually had an
adverse impact on the defense.’ ” Hill, 474 U.S. at 58, 106 S. Ct. at 370,
88 L. Ed. 2d at 209 (quoting Strickland, 466 U.S. at 693, 104 S. Ct. at
2067, 80 L. Ed. 2d at 697).
 Tate’s prejudice argument is limited because the record in this case
consists only of the transcript of the guilty plea proceeding and the
transcript of the sentencing proceeding. The thrust of Tate’s argument is
that he complained of prejudice immediately after the court announced its
sentence when he said “I would like to appeal it. Yes. I would like to
retract. This is not what I was told was going to happen. I’m sorry.”
This argument has some merit because there is a subtle difference between a
defendant who first claims in his or her appellate brief or post-conviction
application that he or she would have chosen a trial, and one like Tate who
indicates a desire to withdraw his plea prior to the close of the
sentencing proceeding. In the latter instance, the defendant’s actions
more likely indicate the defendant’s bona fide desire to choose trial
because his counsel’s error was at the forefront of his mind. However,
standing alone, this statement is barely more than a conclusory claim of
prejudice, and as we stated in State v. Myers, 653 N.W.2d 574, 579 (Iowa
2002), “conclusory claims of prejudice” are not sufficient to satisfy the
prejudice element.
 The record also does not contain other items important to our
analysis. For example, the record does not indicate whether Tate’s trial
counsel told him about the possibility of consecutive sentences. See
Straw, 709 N.W.2d at 138. The record also does not indicate there was a
specific defense or trial strategy forgone by the guilty plea. In
addition, the lone statement “this is not what I was told was going to
happen” is unclear itself. The statement begs the question: what was Tate
told? Without knowing what Tate was told, we cannot determine whether Tate
was prejudiced.[2]
 When presented with this sole assertion of prejudice, we are simply
unable to find Tate has proven, by a preponderance of the evidence, that
but for his trial counsel’s failure to file a motion in arrest of judgment
after the judge did not mention the consecutive sentence requirement, there
is a reasonable probability he would have insisted on going to trial. This
case exemplifies why, as noted above, an ineffective-assistance-of counsel
claim is normally best reserved for postconviction proceedings. See Straw,
709 N.W.2d at 138. Because Tate is unable to prove the prejudice element,
his ineffective-assistance claim must fail. However, we do preserve the
issue for postconviction proceedings so both Tate and his trial counsel
will have the opportunity to establish a record.
 IV.  Conclusion
 Because we find Tate has not established his ineffective-assistance-
of-counsel claim regarding his guilty plea, we affirm Tate’s conviction and
sentence and preserve this issue for postconviction proceedings.
 AFFIRMED.
 All justices concur except Lavorato, C.J., and Wiggins, J., who
dissent separately.
 #139/04-1690, State v. Tate
LAVORATO, Chief Justice (dissenting).
 I join Justice Wiggins' dissent. I would also point out that this
case underscores another reason, in addition to the reasons I stated in my
dissent in State v. Straw, 709 N.W.2d 128, 145 (Iowa 2006) (Lavorato, C.J.,
dissenting), why we should presume prejudice, vacate the judgment of
sentence and conviction, and remand to allow the defendant to plead anew.
Under the majority's approach, a postconviction relief proceeding in cases
like this one will now likely degenerate into a credibility contest between
the lawyer and his or her former client, a contest the former client will
in all likelihood lose. We should not put lawyers and defendants in this
unenviable position. Such unseemly conflict would be unnecessary, and
district court performance would be improved, if we simply enforced Iowa
Rule of Criminal Procedure 2.8(2)(b)'s requirements.
 Wiggins, J., joins this dissent.
 #139/04-1690, State v. Tate
WIGGINS, Justice (dissenting).
 The record is unequivocal that at the time the district court accepted
the defendant's guilty plea, the court failed to advise the defendant that
the sentence for voluntary absence began "at the expiration of any existing
sentence." Iowa Code § 901.8 (2003). I believe this failure violated our
rule requiring the court to inform the defendant of "[t]he mandatory
minimum punishment, if any, and the maximum possible punishment provided by
the statute defining the offense to which the plea is offered." Iowa R.
Crim. P. 2.8(2)(b)(2). For the reasons stated in the dissenting opinion in
State v. Straw, 709 N.W.2d 128, 145 (Iowa 2006) (Lavorato, C.J.,
dissenting), I would presume prejudice, vacate the judgment of sentence and
conviction, and remand the case to the district court.
 Lavorato, C.J., joins this dissent.
-----------------------
 [1]Tate was convicted in 2003 for operating a motor vehicle without
the owner’s consent. He was committed to the custody of the Director of
the Department of Corrections of the State of Iowa for a period of two
years for this crime.
 [2]It may have been preferable for the trial judge, under the
circumstances, to respond to the defendant with a question of “What were
you told?” However, in this setting, the court may have concluded such a
question could violate the attorney-client privilege. This concern
disappears during postconviction relief proceedings.