# IN THE COURT OF APPEALS OF IOWA

No. 15-1975
Filed September 14, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHAUN MICHAEL SAVALA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Taylor County, Gary G. Kimes, Judge.

        Shaun Savala appeals the trial court's denial of his motion for judgment of acquittal as to a second-degree theft charge contending the State failed to prove the requisite specific intent. He further claims ineffective assistance of counsel. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney General, for appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Shaun Savala appeals from his convictions for second-degree theft[1] and second-degree burglary.[2] Savala asserts the trial court erred in denying his motion for judgment of acquittal as to the second-degree theft charge, contending the State failed to prove the requisite specific intent. He further argues ineffective assistance of counsel for his attorney's failure to object to a crime classification being told to the jury in an introductory statement to the jury instructions. We affirm.

## I. Background Facts and Proceedings

During the summer of 2015, Savala began staying at his mother's home. His mother allowed him to stay at her home on the condition that Savala refrain from using methamphetamine. During one of his stays, Savala began withdrawing from the effects of methamphetamine and began displaying volatile and aggressive behavior. This led Savala's mother to lock the door after him one day and to tell him not to return to her home.

On the morning of August 13, 2015, Savala returned to his mother's home despite her having forbidden him from doing so. Savala testified he walked thirteen miles throughout the night to reach his mother's home. When he reached her home, he began knocking on her front door requesting to be allowed in to gather his belongings from her house. Despite his repeated requests, his mother refused to let him into the house.

---

[1] Iowa Code §§ 714.1(1), 714.2(2) (2015).
[2] Iowa Code § 713.5(1)(b).

After several minutes of trying to enter the house and his mother refusing to open the door, Savala kicked in a window near the door. When he did this, his mother sprayed him in the face with pepper spray. Angered, Savala retrieved his own can of pepper spray from his backpack on the porch and returned to the window to spray his mother in the face and on her body.

During this time, his mother yelled for assistance from her other son who resided in the home with her. She pleaded for that son to call 911. His mother experienced what she described as excruciating burning pains in her eyes that temporarily impaired her vision.

When the other son entered the room, he saw Savala standing in the home. That son left the room before returning again to find both his mother and Savala gone from the house. Savala's mother had run to a neighbor's home for fear Savala's anger would escalate and he would subject her to further injury.

At some point during this time, Savala found the keys to his mother's new car on the floor of the home. Savala claims the keys had been on a coffee table near the window he kicked in. Knowing the police were en route and would arrive quickly due to the small size of the town and his previous experiences with the town's police department, Savala took the keys and fled in his mother's car.

When his mother returned home and regained her sight, she noticed her car was missing. She later testified that she did not give Savala permission to take the vehicle.

Six days later, police officers conducted a buy-bust drug deal,[3] in which officers arrested a woman in a truck in a parking lot. Savala was a passenger in that truck. Although he refused to identify himself, officers identified him as Savala and as being the person sought in connection with the theft of his mother's car. He was arrested pursuant to a warrant.

Police officers testified Savala admitted to stealing his mother's vehicle. Savala eventually disclosed the location of his mother's vehicle—inside a barn on someone else's property. After the police impounded the car, his mother recovered it by paying a fee in excess of $200. The body of the vehicle sustained scratches on its top, in front of the hood, and along the sides, as though it had been driven through bushes. It also had mud packed underneath it.

The sole key to the vehicle was missing. Savala's mother had to have the car reprogrammed and had to purchase a new key. At the time of trial, Savala had still not returned the key to his mother. He testified that he knew the person who had the key but refused to disclose their identity saying, he is "not a snitch." He further testified, "If I get out, I will go get them and give them back to her." He also testified that he assumed his mother had a spare key.

Savala testified at trial that he intended on returning the car to his mother on the day he was arrested.

---

[3] A police officer testified this procedure is "when an officer or deputy will contact someone they have as a confidential informant and uses them to purchase drugs."

**II. Standards of Review**

"A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence, and we review such claims for corrections of errors at law." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). In so doing "[w]e consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016) (citation omitted). "We will uphold a verdict if substantial record evidence supports it." *Id.* (citation omitted). "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt.'" *Id.* (citation omitted). If the "evidence only raises 'suspicion, speculation, or conjecture,' it is not substantial evidence." *Id.* (citation omitted).

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion**

**A. Motion for Judgment of Acquittal**

Savala maintains the district court erred in denying his motion for judgment of acquittal regarding the second-degree-theft charge. He contends the State did not present sufficient evidence to prove he had the requisite intent to permanently deprive his mother of her vehicle. He argues that his conviction should be vacated and his case remanded for conviction on the lesser-included offense of operating a motor vehicle without owner's consent.

For the theft charge, the State had the burden to establish Savala committed theft when he took "possession or control of the property of another,

or property in the possession of another, with the intent to deprive the other thereof." Iowa Code § 714.1(1). To prove Savala acted with the requisite intent to permanently deprive his mother of her car, we must determine what Savala was thinking when the act was done. *See State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Because of the nature of this type of inquiry, direct proof will probably not be available and will depend on many factors. *See id.* We can infer the existence of the specific intent "from the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances." *Id.*

At trial, Savala admitted to taking his mother's vehicle without her permission. He testified that he had taken his mother's other cars on many prior occasions, sometimes without express permission, but that he always returned the cars and the keys to her. However, Savala's mother testified that while Savala had taken her cars in the past without her permission and that he had always returned them, she had never allowed anyone, including Savala, to drive this particular vehicle given that it was so new to her and she considered it her "baby." She also acknowledged that even in the past, Savala never returned a car "trashed" or damaged.

However, notwithstanding his prior incidents of taking his mother's cars without her permission, the circumstances surrounding how Savala took this particular car provide valuable insight into his mental state at the time of the taking. First, Savala testified he went to his mother's home to pick up his clothing, which he described as being contained in several bags. However, he arrived at his mother's house on foot and had made no prior arrangements for a

ride afterwards. Then, he took the car keys after having forcibly broken into his mother's home and assaulted her by spraying pepper spray in her face and on her body. Savala testified that he saw his mother's "car keys laying on the floor so I just grabbed them and took off before the cops got there." Finally, Savala never returned the vehicle to his mother. The vehicle was recovered on the day of his arrest when he revealed to police officers the car's location, which was hidden in a barn area away from public sight. The vehicle's damaged and trashed condition also undermines the credibility of Savala's claim he intended to return the vehicle to his mother. Furthermore, Savala's failure to identify the third party in possession of the sole key to his mother's car indicates a further intent to permanently deprive his mother of her car. These surrounding facts and circumstances satisfy us that a rational jury could conclude Savala possessed the necessary intent to permanently deprive his mother. We affirm.

### B. Ineffective Assistance of Counsel

Savala also alleges that trial counsel's failure to object to the introductory statement of the jury instructions, when the second-degree-burglary charge was identified as a class "C" felony, denied him constitutionally effective assistance of counsel. He contends this is equivalent to informing the jury of the potential punishment for the offense. He requests a new trial.

To succeed on this claim, Savala must show by a preponderance of the evidence that "(1) trial counsel failed to perform an essential duty, and (2) prejudice resulted from this failure." *See State v. Fountain*, 786 N.W.2d 260, 265-66 (Iowa 2010) (citation omitted). Savala must prove both elements of this test, or his claim will fail. *See id.* at 266.

We ordinarily do not consider ineffective-assistance claims on direct appeal. *See State v. Taylor*, 310 N.W.2d 174, 179 (Iowa 1981). While "[w]e prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge . . . we depart from this preference in cases where the record is adequate to evaluate the appellant's claim." *Id.* (citation omitted).

The questioned statement occurred in the moments leading up to the court's reading of the jury instructions to the jury.

> The County Attorney of Taylor County filed a trial information against the defendant, Shaun Michael Savala, charging the defendant with the following crimes: burglary in the second degree, *a class "C" felony*, in violation of sections 713.1 and 713.5(1)(b) of the Iowa Criminal Code; theft in the second degree in violation of sections 714.1(1) and 714.2(2) of the Iowa Criminal Code; and theft in the third degree in violation of sections 714.1 and 714.2(3) of the Iowa Criminal Code. The State has alleged that on or about the 13th day of August, 2015, the above-named defendant broke into his mother's home and then stole her car and $1,000.00 in cash from her. To this Information the defendant has entered pleas of not guilty. Upon the issues thus joined, you are instructed as follows . . . .

(Emphasis added.)

The crux of Savala's argument is that the jury was given inappropriate information that permitted it to improperly consider the range of punishment should they find Savala guilty of the offense, and that defense counsel's failure to object amounted to ineffective assistance. We disagree.

We agree with Savala the court telling the jury the classification of the charge was unnecessary. However, we do not feel it rises to the level of impropriety so as to require a new trial. "It is well-settled that juries should not be instructed regarding the statutory penalty for the charged offenses." *State v.*

*Hanes*, 790 N.W.2d 545, 549 (Iowa 2010). As we have previously explained, "'a trial has one purpose—to seek the truth,' and '[p]enalties have nothing to do with the factual determination that a defendant did or did not commit a crime.'" *Id.* (alteration in original) (citation omitted). "Knowledge of the penalty would only serve to confuse and distract the jury from its unique and important judicial function." *Id.* (citation omitted).

Here, the court's statement indicated the level of felony but in no way implied the potential punishment upon a finding of guilt. Additionally, the court instructed the jury that "[t]he duty of the jury is to determine if the defendant is guilty or not guilty. In the event of a guilty verdict, you have nothing to do with punishment."

We are not satisfied that Savala has made a sufficient showing that counsel breached a duty, as this could have been a strategic decision not to draw the jury's attention to the felony classification.[4] In any event, the mention of the felony classification was brief and did not prejudice Savala. Therefore, our inquiry into counsel's effectiveness necessarily ends. *See Fountain*, 786 N.W.2d at 66.

## IV. Conclusion

Based on the foregoing, we find the trial court properly denied Savala's motion for judgment of acquittal, and we deny his ineffective-assistance-of-counsel claim.

**AFFIRMED.**

---

[4] *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (stating "[m]iscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel").