# IN THE COURT OF APPEALS OF IOWA

No. 15-1553
Filed January 11, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**LAMONT MONTEE WILLIAMS,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Story County, Timothy J. Finn,

Judge.


　　　　The defendant appeals his convictions, alleging ineffective assistance of

counsel, and his sentences, alleging the district court abused its discretion.

**AFFIRMED.**


　　　　Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney

General, for appellee.


　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Lamont Williams appeals his convictions and sentences for second-degree burglary, simple assault, assault causing bodily injury, and child endangerment. He alleges his trial counsel was constitutionally ineffective for failing to object to testimony and other evidence derived from his cell phone records. Additionally, he contends the trial court abused its discretion by ordering the maximum fines on each charge and imposing consecutive prison sentences. After careful review, we affirm.

**I. Background Facts and Proceedings.**

Williams and the complaining witness had a two-year romantic relationship, which resulted in a child. All three resided in the complaining witness's home. However, just prior to the incident, Williams and the complaining witness broke up. Williams moved out of the home but left some of his personal effects at her home. The complaining witness eventually took Williams some of his belongings; however, several of his items remained at the home, including some legal documents, his identification, his electronic benefits transfer card, and various photos.

Although no longer romantically involved, Williams and the complaining witness kept in communication with each other via text messages and phone calls. The complaining witness indicated she no longer wished to pursue a romantic relationship with Williams despite his repeated sexual advances. Williams contends the two continued a sexual relationship.

Between March and April 2015, Williams and the complaining witness exchanged text messages, described as "just arguing back and forth." The

arguing apparently peaked on April 13 when the complaining witness told Williams she did not want him anywhere near their child.

That evening, the complaining witness and a friend stayed at the complaining witness's residence, where they smoked marijuana "to relax." Once the friend left, the complaining witness said she took two anti-anxiety and one antidepressant pills before going to sleep. The complaining witness testified she awakened sometime between 11:30 p.m. and 1:00 a.m. when Williams put his penis into her mouth. She further stated he proceeded to have sex with her without her consent while the child was present in the room; Williams denied the two had sex. Following this, the complaining witness testified Williams asked her for a ride back to Ames, to which she agreed because she wanted him out of her home.

The complaining witness testified that although Williams still had personal belongings in her home, he was not welcome to enter without her permission. Williams testified he went to her home in order to retrieve his belongings. He knew the front door did not lock properly and that he could open it.

On the way to Ames with the child in the backseat of her car, the complaining witness and Williams began arguing. The complaining witness contended the argument began when Williams inquired into whether she was seeing other men and bringing them around the child, to which she admitted she was. According to her, Williams became enraged and struck her three or four times in the face with a backhanded, closed fist. She testified she then slammed on the vehicle's brakes in the middle of Highway 30. Williams testified, however, she stopped the vehicle because she dropped a marijuana cigarette when she

became angry Williams was sending text messages to his new girlfriend. Thereafter, the complaining witness exited the vehicle and attempted to call 911; however, she testified Williams stopped her from doing so.

After some time, the complaining witness reentered the vehicle and resumed driving Williams to Ames. At that point, a male friend of the complaining witness called her phone, which upset Williams. Williams then hit her in the face two or three more times. Again, she tried calling 911, but Williams apparently took her phone from her. At this point, the complaining witness testified she again stopped the vehicle to attempt to call 911 for a third time. She then testified she hung up the phone because Williams told her he hid marijuana in her car. Williams denied hitting the complaining witness or stating that he hid drugs in her car but said she hung up the phone because her car smelled of marijuana.

The Iowa Department of Transportation had video from traffic cameras showing a vehicle stopped in the middle of Highway 30 at approximately 1:12 a.m. Also, Ames police did receive a "hang up" call from the complaining witness's phone at 1:25 a.m. but had no record of any other calls from the complaining witness's phone.

After dropping Williams off, the complaining witness testified she drove to Des Moines to see her friend. She later admitted to having sex with the friend.

Later on April 14, the complaining witness went to a hospital for examination. Hospital staff indicated she suffered a mild concussion and multiple bruises to her face. A sexual-assault exam was also conducted, and Williams's DNA was not found. The only DNA found was that of the friend she visited in

Des Moines. A treating nurse practitioner testified the complaining witness's injuries were consistent with the account of events she gave.

The State charged Williams by trial information on April 27, 2015. Williams pled not guilty and demanded a speedy trial.

On July 10, 2015, the State filed a notice of intent to introduce cell phone records from Verizon Wireless (Verizon). During a pretrial hearing, following the denial of his motion to suppress, Williams stipulated to the records' chain of custody and foundational requirements.

The case went to trial on July 21, 2015. During its case, the State presented testimony from Iowa Division of Criminal Investigations Special Agent Holly Witt and Nevada Police Department Officer Ray Reynolds, who obtained Williams's cell phone records from Verizon. Both Witt and Reynolds used the cell phone records as a basis for their testimony, and although the records were marked as an exhibit at trial, they were not introduced into evidence.

Officer Reynolds obtained the records with a search warrant, and he noted the resulting records received from Verizon contained "hundreds of pages of cell phone records." Officer Reynolds indicated the records were sent to Special Agent Witt to analyze and summarize.

Special Agent Witt testified she examined the cell phone records to determine Williams's cell phone location at certain times during the evening of the incident. She explained the records contained round-trip delay time, evolution data optimized for internet, small message service for text messages, and phone call details. She explained the records had been certified as true and accurate from Verizon and that she initially thought the times listed in the records

were in Central Standard Time unless otherwise indicated. However, Witt apparently called and spoke with an employee from Verizon who verified the times were in Mountain Time.

The State then introduced a summary of the information Witt examined from the cell phone records, to which Williams did not object. Witt testified how Williams's phone was located in certain relevant areas, namely his house, the complaining witness's house, and his new girlfriend's house, all at times that corroborated the complaining witness's account of the evening.

The jury found Williams guilty of second-degree burglary, in violation of Iowa Code sections 713.1, 713.5 (2015); two counts of simple assault, in violation of Iowa Code sections 708.1, 708.2(6); assault causing bodily injury, in violation of Iowa Code sections 708.1, 708.2(2); and child endangerment, in violation of Iowa Code section 726.6(1)(a), 726.6(3), 726.6(7).

Williams filed a motion for new trial and motion in arrest of judgment on August 28, 2015; however, the court denied both. On September 2, the court sentenced Williams to ten years' imprisonment and a $10,000 fine for the second-degree burglary count, thirty days' imprisonment with credit for time served and a $100 fine for each simple-assault count, one year imprisonment and an $1875 fine for the assault-causing-bodily-injury count, and two years' imprisonment and a $6250 fine for the child endangerment count. The court ordered all sentences to run consecutively.

Williams appeals. We treat his case as a direct appeal as of right except for the two simple misdemeanor assault convictions. There is no right of appeal from a conviction for a simple misdemeanor; any appeal must be by way of

discretionary review. *See* Iowa Code § 814.6. Williams did not seek discretionary review from his convictions for assault. The Iowa Rules of Appellate Procedure provide that if an appeal is before the court and the wrong form of review was sought, "the case shall not be dismissed, but shall proceed as though the proper form of review had been requested." Iowa R. App. P. 6.108. We treat this appeal as including a delayed request for discretionary review of his assault convictions.

## II. Discussion.

### A. Ineffective Assistance.

Williams maintains his counsel failed to object to the admission of certain testimony and other evidence derived from cell phone records. Specifically, he argues the testimony from Special Agent Witt and Officer Reynolds concerning the time zones of the phone information amounted to hearsay, the statement a Verizon employee made to Witt about the time zones denied his right to confrontation, and the testimony from Witt and Reynolds was irrelevant and prejudicial because of alleged inaccuracies. Because he asserts these claims under an ineffective-assistance framework, we review de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

To prevail on a claim of ineffective assistance of counsel, Williams must prove by a preponderance of the evidence (1) his attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We "look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). Williams's claim will

fail if either element is lacking. *See State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015). Williams must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

We ordinarily do not consider ineffective-assistance claims on direct appeal. *See State v. Taylor*, 310 N.W.2d 174, 179 (Iowa 1981). While "[w]e prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge . . . we depart from this preference in cases where the record is adequate to evaluate the appellant's claim." *Id.* (citation omitted).

Williams's claims are based upon the testimony and other evidence derived from cell-phone-record documents not introduced into evidence during trial. The State argues claims such as these involving documents not in evidence are best preserved for possible future postconviction relief proceedings, and we agree. *See State v. Decamp*, 622 N.W.2d 290, 296 (Iowa 2001) (holding "[i]neffective assistance of counsel claims presented on direct appeal are typically preserved for postconviction relief proceedings to all for a full development of the facts surrounding the conduct of counsel"). Therefore, we preserve Williams's ineffective-assistance-of-counsel claims for possible future postconviction-relief proceedings.

**B. Sentencing.**

Next, Williams argues the court abused its discretion by sentencing him to serve consecutive maximum prison sentences and imposing maximum fines. He

does not, however, argue the court abused its discretion in sentencing him to prison, nor does he contend the court failed to give adequate reasons. He urges us to vacate his sentence and remand for resentencing.

When reviewing a district court's sentencing decisions, we will not reverse absent either an abuse of discretion or a defect in the sentencing procedure such as the consideration of inappropriate matters. *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor," and the choice of one sentencing option over another does not necessarily constitute error. *Id.* at 724-25.

"In applying discretion, the court 'should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances for his reform. . . . The punishment should fit both the crime and the individual.'" *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999) (citations omitted).

Here, the district court imposed the following sentences: ten years' imprisonment and a $10,000 fine for second-degree burglary; thirty days' imprisonment with credit for time served and $100 fine for each simple assault count; one year imprisonment and an $1875 fine for assault causing bodily injury; and two years' imprisonment and a $6250 fine for child endangerment. The court further ordered the sentences run consecutively. While Williams claims the maximum sentences are excessive, each is within the range of punishment allowed and each is supported by adequate reasons.

As to the fines, we find the court did not abuse its discretion. While it is true the fines are the maximum allowed under the Iowa Code,[1] they are within the allowable range. Williams argues the fines are excessive—a total of $18,325 in fines when he currently owed approximately $20,000 in past due child support and had a continuing duty to pay child support. He argues the fines are so sizable it effectively guarantees he will never be able to pay them, and in ordering them, the court abused its discretion. However, the district court had many grounds to consider when it imposed sentence. The court explained:

> Mr. Williams, whenever the court imposes a sentence, it's required to consider a number of factors. Included in that are the nature of the offense, any previous criminal record that the defendant may have, any mitigating factors which may exist.
> But basically it boils down to two things. One is a sentence that will provide the best chance for rehabilitation for you as a person who has violated the law; and secondly, a sentence that will provide for the protection of the community.
> When I review your presentence investigation and consider the evidence presented here, a couple things jump out at me.
> One is the fairly lengthy criminal record that's ongoing over a number of years. It appears to me that you have been given numerous opportunities to rehabilitate yourself and those have been unsuccessful.
> Next, I note the nature of the offense here. I note that both in the presentence investigation as well as your statements here today, you refer to this as a mistake. You do not accept responsibility for your actions. And you blame the jury for finding you guilty of something you claim to not have done.
> In my opinion and based on what the jury said, I think the evidence was overwhelming that you committed a criminal offense

---

[1] Second-degree burglary is a class C felony, punishable by no more than ten years' imprisonment and a fine of at least $1000 not to exceed $10,000. *See* Iowa Code §§ 713.1, 713.5, 902.9(d). Simple assault is a simple misdemeanor, punishable by no more than 30 days' imprisonment and a fine of at least $65 not to exceed $625. *See* Iowa Code §§ 708.1, 708.2(6), 903.1(a). Assault causing bodily injury is a serious misdemeanor, punishable by no more than one year imprisonment and a fine of at least $315 not to exceed $1875. *See* Iowa Code §§ 708.1, 708.2(2), 903.1(b). Child endangerment is an aggravated misdemeanor, punishable by no more than two years' imprisonment and a fine of at least $625 but not to exceed $6250. *See* Iowa Code §§ 726.6(7), 903.1(2).

and it was not a mistake to go into this house after dark in the middle of the night where you had no permission to be there and assault your former girlfriend.

So the fact that you're accepting no responsibility for your actions is a factor which the court will consider here.

. . . .

Whenever—when I think about this, and I heard you say it that you have got all of these children that you need to take care of. Well, I don't—it didn't appear to me that you're doing a very good job of taking care of them.

On our review, we note the district court properly considered various factors and options when imposing punishment on Williams. Nothing in the punishment exceeds statutory limitations, and we find the court did not abuse its discretion.

**III. Conclusion.**

The record before us is insufficient to address Williams's ineffective-assistance claims, and as such, we preserve those for possible future postconviction-relief proceedings. We also find the district court's imposition of maximum fines and consecutive sentences was not an abuse of its discretion. Therefore, we affirm.

**AFFIRMED.**