# IN THE COURT OF APPEALS OF IOWA

No. 20-0347
Filed October 7, 2020

**IN THE INTEREST OF K.K., C.K., and J.K.,**
**Minor Children,**

**Y.T., Mother,**
        Petitioner-Appellant,

**K.K., Father,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Henry County, Clinton R. Boddicker,

District Associate Judge.


        A mother appeals the juvenile court order denying her petition to terminate

a father's parental rights to three minor children. **AFFIRMED.**


        Beau A. Bergmann of Bergmann Law Firm, P.L.L.C., Mt. Pleasant, for

appellant mother.

        Sally Frank of Drake Legal Clinic, Des Moines, for appellee father.

        Steven Giebelhausen, Fort Madison, attorney and guardian ad litem for

minor children.


        Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Believing his visitation rights with his children had been interfered with for a significant period of time, the father of these minor children brought suit against the children's mother seeking to establish his visitation rights.[1]  Apparently subscribing to the philosophy that the best defense is a good offense, the mother responded by filing a termination of parental rights suit against the father pursuant to Iowa Code chapter 600A.  The juvenile court denied the mother's termination petition.  The mother appeals, arguing the juvenile court erred by concluding she failed to establish the father had abandoned the children within the meaning of Iowa Code section 600A.8(3) (2019).

## I.    Background

At the time of trial, K.K., J.K., and C.K. were twelve, ten, and eight years old respectively.  The children were raised by the mother and father in Des Moines until September 2015.  That month, the parents split up, the mother filed a petition for relief from domestic abuse pursuant to Iowa Code chapter 236, and the father consented to the entry of a domestic abuse no-contact order naming the mother as the protected party.  The mother and children moved to Mount Pleasant.  The no-contact order[2] included a visitation schedule whereby the father would have supervised visits with the children every other Saturday.  The order provided visitation would take place alternatively at public libraries in Mount Pleasant or Altoona.  Both parents testified that visits took place outside the no-contact order's

---

[1] This appeal does not involve the visitation suit.
[2] Due to an extension, the no-contact order remained in effect until September 2017.

visitation schedule.   The mother testified that only a few visits occurred in Altoona because she found it difficult to get there.   The father testified that many of the visits were supervised by the mother and that he would go to Mount Pleasant "[a]lmost every weekend" and stay at the mother's apartment.

The parents' relationship was generally mutually cooperative regarding the father's visitation at first, but then it gradually began to deteriorate.   Early on, the father was permitted access to the children via the phone three to five times per week.   However, as time wore on and the father began a new relationship with another woman, the father testified the mother began to curtail his phone access to the children.   The mother would tell the father the children were playing outside, were busy with other things, or did not want to talk to the father.   Faced with these excuses, the father began to have less and less phone contact with the children, and eventually he stopped talking to the children on the phone entirely.   He explained the mother eventually stopped putting the children on the phone or would not answer the phone when he called.   The mother testified on cross-examination that she allowed the children to decide whether or not to talk to the father on the phone.

The parents' relationship further soured after the father got engaged in the summer of 2016.  The mother did not want the children to visit the father if his new spouse was present.   In one instance, the stepmother testified that the mother offered to have a visit at a local mall in Des Moines but only if the stepmother was not present.

Visits between the father and the children ceased altogether after an incident in December 2017.  The father and stepmother traveled to Mount Pleasant

for C.K.'s birthday party, but they left after the stepmother and the mother's sister got into a heated argument. Following this incident, the parents primarily communicated via text message, and no further visits were held. In October 2018, the mother informed the father via text that, unless she was given "court papers," he was not to contact either her or the kids. The father filed a petition for custody seeking visitation in March 2019. The mother failed to respond, and the father filed a notice of intent to file written application for default on June 27, 2019.[3] One week later, on July 2, the mother filed the petition to terminate the father's parental rights, arguing the father had abandoned the children pursuant to Iowa Code section 600A.8(3). The mother filed her answer to the father's petition in the visitation proceeding one day later.

The termination hearing was held on January 10, 2020. The juvenile court determined the mother failed to meet her burden to prove the father abandoned the children or failed to financially support them and dismissed the mother's petition.[4] This appeal followed.

---

[3] *See* Iowa R. Civ. P 1.972.

[4] The mother's petition referenced a ground for termination pursuant to Iowa Code section 600A.8(4) for failure to financially support the children. Presumably this prompted the juvenile court to address that ground in its ruling. On our review of the record, we note the mother's petition, while referencing section 600A.8(4), omitted any reference to lack of financial support in stating her basis for seeking termination. Likewise, the mother did not raise an issue of failure to financially support the children in her post-trial brief or brief on appeal. Therefore, we will not address any claim for termination based on lack of financial support on appeal, even though the juvenile court addressed the issue in its ruling. *See Goode v. State*, 920 N.W.2d 520, 524 (Iowa 2018) (noting claims raised on appeal must be specific and failure to satisfy the specificity standard constitutes waiver of the claims).

## II.  Standards of Review

We review private termination proceedings de novo.  *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).  "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses."  *Id.* (quoting *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998)).  "We review evidentiary rulings for an abuse of discretion."  *In re Q.G.*, No. 16-2152, 2017 WL 3283360, at *2 (Iowa Ct. App. Aug. 2, 2017), *vacated on other grounds*, 911 N.W.2d 761 (Iowa 2018).  "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016).

## III.  Admission of Exhibits

Before addressing the underlying merits, we will first address the mother's challenge to the juvenile court's rulings admitting various exhibits offered by the father.  The father offered six exhibits during the termination hearing, all of which were admitted over various objections by the mother.  The mother challenges the rulings admitting the exhibits, though it is not entirely clear which rulings she challenges.  The arguments in her brief focus on admission of two exhibits that were subject to a prehearing motion to strike.  Based on the briefing, we will limit our review to the admission of those two exhibits.

The day before the termination hearing, the father submitted two proposed exhibits to the court via the electronic document management system (EDMS) in anticipation of offering the exhibits at the hearing.  The exhibits, labeled as respondent's exhibits A and B, consisted of a string of text messages between the father and mother.  Approximately two hours after the proposed exhibits were

submitted through the EDMS, the mother filed a motion to strike the exhibits. The grounds asserted in the motion were the exhibits were untimely in violation of Iowa Rule of Civil Procedure 1.500(3)(b).

The juvenile court addressed the motion the next day at the start of the termination hearing. The juvenile court expressed the opinion that rule 1.500(3) did not apply to the case by operation of rule 1.500(1)(e)(8), which excludes juvenile proceedings from the initial disclosure requirements of rule 1.500(1). Based on this interpretation, the juvenile court denied the mother's motion to strike but made it clear the mother was free to object to the exhibits as they were offered during the hearing.

During the termination hearing, when the father offered exhibit A, the only objection raised by the mother was, "I would have objection to these, Your Honor." This objection was insufficient to alert the juvenile court to the nature of the objection and did not preserve error, so we find no error in the admission of exhibit A. *See State v. Taylor*, 310 N.W.2d 174, 177 (Iowa 1981) ("It is incumbent upon the objecting party to lodge specific objections so the trial court is not left to speculate whether the evidence is in fact subject to some infirmity that the objection does not identify. Every ground of exception that is not particularly specified is considered abandoned.") (internal citations omitted)).

When exhibit B was offered, the mother objected on the basis that she "would like to renew [her] motion to strike on this based on—on time of production to as a pretrial matter." The juvenile court overruled the objection and admitted the exhibit. On appeal, the mother concedes that rule 1.500(3)(b)'s requirement that exhibits be identified at least fourteen days before trial did not apply due to

rule 1.500(1)(e)(8), which excludes juvenile proceedings from the initial disclosure requirements of rule 1.500(1).[5]  Instead, the mother makes various generic, non-rules-based claims that admitting the late-disclosed was unfair and unjust.  However, other than quoting a line from a comedy movie, she cites no authority in support of her claim.  This failure to cite authority waives the issue.  *See* Iowa R. App. P. 6.903(2)(g)(3).

Even if we were to ignore the waiver problem, we find no abuse of discretion in the juvenile court's admission of exhibit B.  Faced with untimely disclosure of or supplements to discovery-related information, courts have a wide range of available choices, which includes admitting the untimely evidence if the evidence is harmless.  *See Lawson v. Kurtzhals*, 792 N.W.2d 251, 258–59 (Iowa 2010).  Exhibit B consisted of a series of text messages between the mother and father.  Given the fact the mother was a party to the text messages, we are hard-pressed to conclude she was unfairly surprised or prejudiced by the text messages surfacing as exhibits.  The juvenile court did not abuse its discretion in admitting the text-message exhibit.

---

[5] It is not clear to us that the exception for juvenile proceedings set forth in rule 1.500(1)(e)(8) applies to the disclosure requirements of rule 1.500(3). By its terms, the exception set forth in rule 1.500(1)(e) only applies to the initial disclosure requirements of rule 1.500(1)(a) through (d). It may be that the pretrial disclosures required by rule 1.500(3) are different disclosures than the initial disclosures required by rule 1.500(1) and may not be subject to the "juvenile proceedings" exception of rule 1.500(1)(e)(8). However, since the mother concedes for purposes of this appeal that rule 1.500(3) does not apply, we need not address this issue. We note the issue for the sole purpose of making it clear that our decision is not to be interpreted as holding that the exceptions contained in rule 1.500(1)(e) do or do not apply to the disclosure requirements of rule 1.500(3). We will leave resolution of that issue to another case when the issue is squarely raised and argued.

## IV.    Statutory Grounds

Private termination actions under chapter 600A involve a two-step process. *B.H.A.*, 938 N.W.2d at 232.  As the parent seeking termination, the mother must first show, by clear and convincing evidence, that one of the statutory grounds for termination enumerated in 600A is present.  *Id.*  Once she has done so, the mother must next show that termination is in the children's best interest.  *Id.*  She must prove both steps by clear and convincing evidence.  *Id.*

The mother argues the father abandoned the children within the meaning of Iowa Code section 600A.8 because the father failed to maintain contact with the children.  Under our statutory scheme, a parent "is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means."  Iowa Code § 600A.8(3)(b).  A parent can demonstrate that the parent has maintained substantial and continuous or repeated contacts by

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.*

The mother argues the father abandoned the children by failing to visit them for two years.  But the mother's argument ignores her own role in preventing the

father from interacting with the children. The text-message exhibits demonstrate that, throughout 2018, the mother repeatedly denied the father's requests to visit the children. She would not allow the father to visit children without her there to supervise. She further would not let the children visit the father if the stepmother would be there. The mother similarly thwarted the father's efforts to contact the children by phone. The mother testified at the termination hearing that she did not prevent the father from talking to the children on the phone, instead letting the children decide themselves whether they wanted to talk to the father. But as the district court aptly noted in its findings of fact, the mother's placing the decision of whether to talk to the father "up to three children under the age of thirteen . . . placed the children, intentionally or not, in the middle of her conflict with" the father "and, at the same time, undermined [the father]'s relationship with the children." Despite being told not to contact her any more unless it was through the legal process, the father texted the mother in December 2018 and asked to speak with the children. He received no response.

In light of this evidence, we conclude the mother prevented the father from visiting or maintaining contact with the children. Therefore, she failed to meet her burden to prove the father abandoned the children within the meaning of Iowa Code section 600A.8(3).

Having concluded the mother did not meet her burden of proving a statutory ground for termination, we need not address her challenge to the juvenile court's ruling that termination would not be in the children's best interest even if a statutory ground for termination had been established.

**AFFIRMED.**