# IN THE COURT OF APPEALS OF IOWA

No. 20-1263
Filed January 12, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JAY SALGE,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

Jay Salge appeals the imposition of consecutive sentences. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Jay Salge pleaded guilty to fifty-eight counts of sexual exploitation of a minor, in violation of Iowa Code sections 728.1(7) and 728.12(3) (2020). Salge argues the consecutive sentences imposed are grossly disproportionate to his crimes under the United States and Iowa Constitutions. Salge also contends the district court abused its discretion by failing to give adequate reasons for imposing consecutive prison sentences. Salge was not given a mandatory minimum sentence and is immediately eligible for parole. We therefore reject his claim of cruel and unusual punishment. We discern no abuse of the court's sentencing discretion. We affirm.

**I. Background Facts and Proceedings.**

Salge pleaded guilty to possessing fifty-eight images of minors engaged in prohibited sex acts. Those images included adults performing sex acts on children, children performing sex acts on children, and children engaged in bestiality. Under the plea agreement, Salge could argue for any legal disposition; in exchange, the State agreed not to file additional charges or refer the matter for federal prosecution.

Salge was forty-three years old at the time of sentencing. According to the presentence investigation (PSI) report, Salge was in foster care prior to being adopted at age two by the Salge family. His father indicated Salge has a "marginally retarded IQ" and many learning disabilities. Salge has been involved in a number of mental-health institutions and treatments over his lifetime. At the time these charges were being investigated, Salge was living on his own in an

apartment, receiving Social Security Disability Income (SSDI), and receiving assistance from a social worker.

At sentencing, the State urged the court to follow the recommendation in the PSI report and impose the maximum sentence on each charge (two years), with the sentences to be served consecutively. Salge's counsel acknowledged Salge "will need services no matter where he is, whether he's in prison or in a home some place." Salge asked that the court consider probation and placement in a secure facility with treatment. The district court, however, imposed consecutive terms of imprisonment with no mandatory minimum and immediate parole eligibility. Salge now appeals.

## II. Scope and Standards of Review.

Salge's appeal is allowed despite Iowa Code section 814.6[1] because he is appealing only the sentences imposed. *See State v. Damme*, 944 N.W.2d 98, 100 (Iowa 2020) ("We hold that the good-cause requirement is satisfied in this context when the defendant appeals a sentence that was neither mandatory nor agreed to in the plea bargain.").

We review the sentences imposed for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

> [T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the

---

[1] Section 814.6 provides:
   1. Right of appeal is granted the defendant from:
        a. A final judgment of sentence, *except* in the following cases:
        . . . .
        (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.
(Emphasis added.)

consideration of inappropriate matters. An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable.

*Id.* (internal citation omitted).

When a defendant raises a constitutional challenge to a sentence, our review is de novo. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).

**III. Discussion.**

*A. Constitutional challenge.* Iowa Code section 728.12 makes it a crime to "possess a visual depiction of a minor engaging in a prohibited sexual act or the simulation of a prohibited sexual act." Iowa Code section 728.1(7) defines "prohibited sexual act" and includes "[a]n act of bestiality involving a minor," "fondling or touching the pubes or genital of a minor," and "[n]udity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor."

Section 728.12(3) defines the unit of prosecution for the offense of sexual exploitation of a minor:

> A visual depiction containing pictorial representations of different minors shall be prosecuted and punished as separate offenses for each pictorial representation of a different minor in the visual depiction. However, violations of this subsection involving multiple visual depictions of the same minor shall be prosecuted and punished as one offense.

Here, Salge admitted he was in possession of images of fifty-eight different infant-to-prepubescence minors engaged in prohibited sexual acts.

Salge does not claim the statutory two-year sentence for the offense of sexual exploitation of a minor is unconstitutional. Rather, Salge argues the

imposition of a 116-year term is a "de facto life sentence" and grossly disproportionate to his crimes.

Salge cites *State v. Null*, 836 N.W.2d 41 (Iowa 2013), in support of his contention that we should consider his aggregate sentence. *Null* involved the question of cruel and unusual punishment for juvenile offenders. 836 N.W.2d at 76–77. As explained in *State v. Graham*:

> The Cruel and Unusual Punishment Clause "embraces a bedrock rule of law that punishment should fit the crime." The notion that punishment should fit the crime, however, is an abstract generality. The United States Supreme Court has struggled to develop a coherent framework to implement that generality.
>
> Three recent United States Supreme Court cases have explored the application of the Cruel and Unusual Punishment Clause to juvenile offenders. In *Roper* [*v. Simmons*, 543 U.S. 551 (2005)], the Court held the Eighth Amendment categorically prohibited the imposition of the death penalty on defendants who were juveniles at the time of the offense. The *Roper* Court analyzed "the evolving standards of decency that mark the progress of a maturing society" by seeking evidence of a national consensus and by bringing its own independent judgment to bear on the question. The Court also articulated the broad areas of fundamental difference between juvenile and adult defendants. Juveniles lack maturity and often have "an underdeveloped sense of responsibility . . . [which] often result[s] in impetuous and ill-considered actions and decisions." "[J]uveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." Finally, "the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed."
>
> These fundamental differences mean that juveniles lack the same moral responsibility as adults and are less likely to have an "irretrievably depraved character" due to the transitory nature of youth. Because of this, some penological justifications apply with less force to juvenile defendants—retribution, because juveniles lack the same moral culpability, and deterrence, because juveniles often do not engage in a cost-benefit analysis that attaches any real weight to punishment. In a later case, the Court also explained that the goal of incapacitation applies with less force toward juveniles, because very few juveniles are truly incorrigible and it is exceedingly difficult to determine which rare juvenile is so.
>
> Our cases have extended the reasoning of *Roper*, *Graham* [*v. Florida*, 560 U.S. 48 (2010)], and *Miller* [*v. Alabama*, 567 U.S. 460 (2012)] under the Iowa Constitution, article I, section 17. As we

explained in [*State v.*] *Sweet*, [879 N.W.2d 811 (Iowa 2016),] our cases have embraced the general principles of the *Roper–Graham–Miller* trilogy and have applied them to de facto life sentences, very long sentences, and relatively short sentences.

897 N.W.2d 476, 483–84 (Iowa 2017) (citations omitted).

But, Salge is a forty-three-year old adult and provides no authority that we should extend the juvenile sentencing considerations to adults. In fact, our case law suggests otherwise:

In *State v. Jones*, 298 N.W.2d 296 (Iowa 1980), we held that consecutive sentences, even if lengthy, do not constitute cruel and unusual punishment. 298 N.W.2d at 300. We concluded there was no Eighth Amendment violation where a consecutive twenty-five-year sentence was imposed on a defendant who was already serving sentences totalling fifty-one years. *Id.*

In [*State v.*] *Lara*, we held that a sentence that is not otherwise cruel and unusual does not become so simply because the defendant must serve the entire sentence. 580 N.W.2d [783,] 785 [(Iowa 1998) (citation omitted)]. In *Lara*, the defendant was sentenced to concurrent, indeterminate twenty-five-year terms for eleven convictions of first-degree robbery. *Id.* at 784. These sentences were subject to the statutes requiring that the defendant serve one-hundred percent of his sentence and receive a maximum reduction of fifteen percent for good conduct time. *Id.* (citing Iowa Code §§ 902.12, 903A.2). We held that the defendant's sentences did not lead to an inference of gross disproportionality given the risk of death or serious injury involved in the commission of first-degree robbery. *Id.*; *see also State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa 1998) (holding defendant's "ten-year sentence imposed upon a conviction of second-degree robbery, of which [defendant] is required to serve 100%, [does not] lead to an inference of gross disproportionality").

We think the result is the same in the present case. August committed *two* serious crimes. The fact he will have to serve his sentences consecutively does not make these otherwise permissible sentences disproportionately severe. There is nothing cruel and unusual about punishing a person committing *two* crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing.

*State v. August*, 589 N.W.2d 740, 744 (Iowa 1999). Here, the district court imposed no mandatory minimum, and Salge is immediately eligible for parole. We are not persuaded the court imposed a de facto life sentence.

Salge argues the same concerns related to juvenile offenders are present here because he is intellectually disabled. While the United States Supreme Court has eliminated the death penalty for the intellectually disabled, the Court has also said that intellectually disabled persons "should be tried and punished when they commit crimes." *Atkins v. Virginia*, 536 U.S. 304, 306, 321 (2002). The record is far from clear that Salge is intellectually disabled.[2] And unlike the "transitory nature of youth," Salge has a history of mental illness and poor impulse control. Salge acknowledges the Supreme Court has observed intellectual disability is a "double-edged sword" because it may be mitigating for purposes of culpability and an indicator of future dangerousness. *See id.* at 321; *see also Penry v. Lynaugh*, 492 U.S. 302, 324 (1989) ("Penry's mental retardation and history of abuse is thus a two-edged sword: it may diminish his blameworthiness for his crime even as it indicates that there is a probability that he will be dangerous in the future.").

Salge argues the 116-year sentence is grossly disproportionate to his crimes in violation of the Eighth Amendment and article I, section 17 of the Iowa Constitution.

> We use a three-prong test to determine whether a sentence is grossly disproportionate under the Iowa and United States Constitutions. First, we examine "whether the sentence being reviewed is 'grossly disproportionate' to the underlying crime," which "involves a balancing of the gravity of the crime against the severity of the sentence." This is the threshold question, and we do not inquire any further if the challenged sentence does not appear

---

[2] The record shows he has mental illness and his father informed the presentence investigator Salge has a "marginally retarded IQ."

grossly disproportionate based on this balancing. If the threshold is met, we then engage in the second step of our analysis in which we partake in an intrajurisdictional analysis, comparing the challenged sentence to sentences of other crimes in our jurisdiction. Finally, we perform an interjurisdictional review, surveying the sentences for similar crimes in other jurisdictions.

*State v. Harrison*, 914 N.W.2d 178, 202–03 (Iowa 2018) (citations omitted).

Salge contends he has met the threshold test of the gross disproportionality analysis by establishing that his personal culpability (based on his intellectual disability) and the nature of the offense create an inference of gross disproportionality when considering the harshness of the 116-year prison sentence imposed.

The State contends Salge's 116-year prison sentence is not grossly disproportionate to his crime of committing fifty-eight counts of possessing child pornography. The State notes Salge is immediately eligible for parole and earned-time credit. The State also asserts Salge cannot meet the threshold test as a two-year sentence with immediate parole eligibility is not disproportionate to possessing child pornography and aggregating sentences does not make a constitutional sentence unconstitutional.

The State further argues Salge's sentence is not grossly disproportionate under the Iowa Constitution. First, the State contends Salge's argument that his intellectual disability should be a unique factor that could make a sentence grossly disproportionate cannot help him because he offered no evidence at sentencing that he has an intellectually disability. The PSI only discussed his "marginally retarded IQ" and "mental illness." Second, the State asserts this court should decline Salge's invitation to abandon the threshold test as he failed to show why this court should change the law. Finally, the State contends that even applying

the more stringent review afforded under the Iowa Constitution, only a rare case will pass the threshold test. The State argues this is not such a case.

We are to "keep in mind certain general principles" in determining "whether the challenged sentence is grossly disproportionate." *Id.* at 203.

> "The first is that we owe substantial deference to the penalties the legislature has established for various crimes." Second, though we provide a more demanding review of a defendant's sentence for gross disproportionality under the Iowa Constitution than available under the United States Constitution, "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." Third, "a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender." Finally, we analyze the facts of each case in reaching our threshold determination because they "can 'converge to generate a high risk of potential gross disproportionality.'"

*Id.* (citations omitted)

Salge argues we should eliminate the threshold test and find that no one factor is dispositive in the gross proportionality analysis. The Iowa Supreme Court has applied the threshold test to an Iowa Constitutional challenge as recently as 2018. *Id.*; *State v. Wickes*, 910 N.W.2d 554, 572–73 (Iowa 2018). This court is "not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

Salge's claim of cruel and unusual punishment fails on the threshold question. With respect to the offense of sexual exploitation of a minor, our legislature has determined each image of a different child constitutes a separate offense. Salge admitted to possession of fifty-eight images depicting very young children engaging in a prohibited sexual acts. *See* Iowa Code § 901.8 ("If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding

sentence."). "There is nothing cruel and unusual about punishing a person committing [fifty-eight] crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing." *August*, 589 N.W.2d at 744. Salge faces a concededly long term of years—but the court imposed no mandatory minimum and Salge is immediately eligible for parole. We do not conclude this is the "rare" case where the punishment is so grossly disproportionate as to be unconstitutional.

*B. Sentencing discretion.* We turn to Salge's claim the court abused its sentencing discretion in imposing consecutive sentences and giving inadequate reasons for doing so. A sentencing court must state their reason for imposing a particular sentence on the record. Iowa R. Crim. P. 2.23(3)(d); *see State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010). It must also state on the record its reason for imposing multiple sentences consecutively. *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). The reasons provided need not be detailed but must be sufficient "to allow appellate review of the trial court's discretionary action." *State v. Hill*, 878 N.W.2d 269, 274 (Iowa 2016) (citation omitted). "Sentencing courts should also explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *Id.* at 275.

Here, the sentencing court engaged in a lengthy discussion of the reasons for the sentences.

> All right. The court's considered all the sentencing provisions provided for in Iowa Code chapters 901 and 903, and my sentence is based upon my judgment of what will provide the maximum opportunity for your rehabilitation and at the same time protect the community from further offenses by you and others.

I note quite a few things. I would note for the record as far as my reasons for my sentence and as far as general sentencing parameters, I would note several rationales apply to this case, including incapacitation, specific and general deterrence, rehabilitation, and retribution.

But as far as permissible sentencing factors, I would note your age, at forty-three years old; your prior record of convictions. I would note [defense counsel's] indication that many of them, if not all of them, were assaults. I note one trespass. Most of them are simple misdemeanors between the years of 1997 and 2007 were your offense dates. Over that period of time, there were twelve assaults, including two serious assaults and one assault on a peace officer.

I would also note [defense counsel's] indication that at least a portion of that time you were in facilities, which would—which would go along with some of the indications in the [PSI] of which [your father] indicated that you were removed from several of the facilities for intimidation of staff and aggressive tendencies.

I would note your employment circumstances, that you have not ever held employment due to your disability, that you receive SSDI since you became an adult for mental illness.

Your family circumstances, of which [your father] set forth in the "Family Dynamics." In any respects, that you were in foster care the first two years of your life until your biological parents' parental rights were terminated and you were adopted by the Salge family, of which you indicated your relationship status is good, but at least you appear at least to [your father] that you inherited the mental illness of your mother and father—your biological mother and father.

I would also note the nature of the offense, of which, of course, the court has a lot to indicate in that. In looking at the [fifty-eight] counts—and, again, I note that [thirty-six] of the [fifty-eight] are pure nudity—I really categorized them. And these are the highlights, again, noting that some of these are only based on descriptions because the court has not seen all [fifty-eight].

But there are multiple in some of these categories, but an indication or some of the images as pleaded guilty to by you: Anal intercourse by an adult male to a male child, nudity, exposing female vagina, male to female anus, and male erect penis, all children. Oral sex on an adult male by both boys and girls, vaginal intercourse with young girls by an adult male, forced masturbation by a child; of course, nudity.

And I would specifically note that nudity involves nudity from infancy. There is at least one infant that was shown in the [one] of the [twelve] exhibits that were now admitted all the way up to prepubescent girls.

There also involved bestiality involving vaginal and oral sex with an animal, as well as manual stimulation of an animal, of vaginal intercourse for stimulation between a male and female child, child on child, a few depictions of adult males ejaculating on a child. In one

of the exhibits admitted it was clearly a very young child on her. And finally a child that was bound with a jump rope being digitally penetrated in her anus and vagina by presumably an adult.

So with regard to the images themselves, I have several observations. One, the volume. We're looking at [fifty-eight] counts. Two, the ages of the children, ranging from infancy to prepubescent toddlers, at least in the images that's been admitted and as indicated in the approximate ages it would be a complete lack of development of an adult male or female. It was clearly young children that was in your interest and your wheelhouse.

And the depravity of the pictures themselves, again, noted that the [thirty-six] of the [fifty-eight] were pure nudity, but the remaining [twenty-two] including bondage, bestiality, anal rape, vaginal rape, forced penetration, forced copulation, and forced nudity. So those images that you have pleaded guilty to and your possession of them causes the court great concern.

I would note your living arrangement as is indicated, as well in your institutionalization for . . . up until the last five or six years. You've indicated that you've been previously diagnosed with depression, anxiety, and bipolar disorder. I note that you are a high school graduate and with the caveat that [defense counsel] indicated.

I do also note your treatment at Woodward Resource Center, of which there wasn't a lot of information indicated about that particular placement, but there was an indication of some level of appropriate sexual behavior treatment or education.

I also note that you were, yourself, a victim, at least as recited by you. You indicated that five years ago you were forced by an adult male to perform oral sex. That was in part of your [PSI] report. I also note the recommendation, of course, of the parties, the arguments of counsel, and the [PSI] recommendation as well.

I also note the plea agreement, which specifically indicates that by pleading guilty and open to these charges that you are—the State has agreed to not file additional counts or additional charges or federal prosecution.

The court has concern insofar as, you know, as noted by [defense counsel] there's no argument that you made or disseminated the photos. This isn't knowingly possessing child pornography in a dissemination crime. And as you indicated, this isn't a victimless crime.

And that's—I hope that you understand the gravity and it's not just words that you're saying. I hope that you understand that—that these children are victims of you even though you weren't the one[] putting them in the photographs because you are feeding a market for child pornography and for child victimization.

And I agree with [the prosecutor]. In looking at . . . several images that were admitted—that in looking at the face of the children and their eyes, it's haunting. Not just the act themselves, but you

can almost see the trauma or even some of them the vacancy in the situation that they find themselves in.

I note your record of assaults—although certainly you have no felony conviction—you've been fined; you've been given the benefit of informal probation; you've been given jail sentences, never a prison sentence, but you've had that continuum of penalties in your past. I would note my concern that these assaults show a lack of impulse control, a lack of respect for the person of another. That is concerning, coupled with your apparent sexual appetite for very young children or at least viewing images of very young children.

You know, there was an indication by [your father] . . . . "He can read people very well and knows who to respect and who he can int[imidate]. He had to leave most of the facilities that he was placed in for intimidation of staff."

That shows a level of observation by your father that arguably may know you better than most of really—despite your mental capacity, of which was referred to in the PSI, some level of manipulation or awareness of who you should say what to to get the results that you want and who is vulnerable, of which children are among the most vulnerable in our community.

And so in fashioning a sentence, I do believe that probation isn't appropriate for you. The question is not whether you should receive a prison sentence, but how long of a prison sentence you should receive. And I do believe you need to be incarcerated to protect the community and the most vulnerable within our community, our children, very small children, in fact.

I believe that my sentence will also serve specific deterrence, insofar as deterring you from committing similar offenses, and general deterrence from both individuals who manufacture child pornography and individuals that purchase, download, consume child pornography.

I would note, as I did before, your prior institutionalization and your prior participation in a sex offender curriculum. But your rehabilitation is extremely important to the court. Clearly the toxic mix of your sexual predilection and viewing habits, coupled with your mental illness and your lack of impulse control is particularly dangerous if not in a controlled environment such as institutions or penal facilities.

And [the prosecutor] touched on retribution, and really the want for punishment that is just based upon an offense like this. I would note an appellate case, *State v. Osborn*, which was upheld. It was a court case from 2016, [No. 16-1066, 2018 WL 4922938 (Iowa Ct. App. Oct. 10, 2018)] . . . : "As a consumer of prohibited content, he is a market participant driving demand for the creation of prohibited content. These crimes are not victimless." . . .

And so I would note in that particular case, [the district court] categorized the offenses, really there are some that are more salacious and some that are less salacious and whether the

sentence was consecutive or concurrent was based upon, really, the perceived offensiveness of the photographs themselves.

Again, in your case, [twenty-two] of the [fifty-eight] counts would include items that were not expressed nudity with no other components as I previously indicated on the record. You know, and the court in considering all of these factors, you know, is somewhat tempted to do [as the *Osborn* court did]. And I note that was upheld as far as being an appropriate way to hand down judgment.

But in your case, I wish to look at every single count. And I— And I think I've laid it forth, but the volume, the depravity, your particular offender characteristics, I believe that you are a great risk to the community, and I take that in consideration in knowing that you will also be subject to the registry requirements, in the tier 3 sex offender, as well as a ten-year special sentence. But it is what I believe is appropriate.

. . . .

It is further the judgment of the court that you be and are hereby committed to the custody of the Director of Division of Adult Corrections, State of Iowa for a term not to exceed two years for each count. . . .

. . . These counts will run consecutive one to another. And the gravity of that is not lost on this judge, that I am levying a 116-year sentence upon you with an additional ten-year sentence. The reasons for my sentence have been clearly outlined by the court.

The district court gave more than enough information for us to determine its reasons for the sentence, and those reasons were not unreasonable or untenable. We are able to discern the court's reasoning for consecutive sentences. The district court considered the *Osborn* court's categorization of offenses, but concluded consecutive sentences were appropriate in light of the "volume, the depravity, your particular offender characteristics," and the risk Salge posed to the community. The court stated: "I wish to look at every single count." We find no abuse of the court's sentencing discretion.

**AFFIRMED.**